Wayne Lawrence sued Terrance Michael Brown, alleging that Brown had negligently or wantonly caused a collision between the parties' automobiles and that the collision had injured Lawrence. During the course of trial, Brown consented to a directed verdict for Lawrence on the negligence count. The jury returned a verdict for Lawrence on the wantonness count, awarding him $38,000 in "past compensatory damages" and $162,000 in "future compensatory damages." Brown moved for a new trial or remittitur, and the trial court denied his motion. Brown appeals.
A jury verdict is presumed correct, and this presumption is strengthened by a trial court's denial of post-judgment relief. In reviewing a judgment based on a jury verdict, we view the evidence in a light most favorable to the nonmovant. The evidence indicates the following facts:
On May 10, 1990, Brown drove his vehicle into the back of Lawrence's vehicle when Lawrence stopped his vehicle at a red traffic light. Lawrence received no medical treatment for injuries on the day of the accident; however, the following day he began experiencing back pain and consulted a doctor. The doctor prescribed ibuprofen, a nonprescription pain reliever. Lawrence's pain worsened over the next few days, and he consulted Dr. Robert Hollis, a chiropractor. Lawrence began a course of treatment from Dr. Hollis that utilized traction, ultrasonic massage, electrical stimulation, and spinal manipulation. Dr. Hollis ultimately diagnosed the problem as brachial neuritis/radiculitis, a condition of chronic pain radiating from the brachial plexus group of nerves, and he concluded that it resulted from a soft-tissue injury to Lawrence's neck and back. Several months after making this diagnosis, Dr. Hollis made a thermogram, an infrared light picture that indicates, by the color that appears on the picture screen, a patient's degree of soft-tissue injury. A thermogram is usually conducted several months after an injury, when any initial swelling has receded and the true severity of the damage is more apparent. Based on Lawrence's thermogram, Dr. Hollis confirmed his initial diagnosis. In all, Lawrence made 130 visits to Dr. Hollis for treatment in the approximately 2 1/2 year period between the accident and the trial. *Page 464 
At trial, Dr. Hollis testified that Lawrence had undergone surgery for lower back problems five years before the accident and that the injury from the accident exacerbated his pre-existing back condition. He also testified that Lawrence has suffered a permanent impairment of his body as a whole and can expect to suffer recurring neck and back pain for the rest of his life. To describe Lawrence's condition, Dr. Hollis testified about the results of Lawrence's thermography. Dr. Hollis first stated that thermography was an acceptable diagnostic tool within the medical community and Brown's counsel objected, arguing that Dr. Hollis was not qualified to make this statement because he was not a medical doctor. The court overruled the objection, and Dr. Hollis went on to describe how certain colors revealed on Lawrence's thermogram indicated "trigger points," that is, certain areas of cartilage that were scarred from the accident and that would probably trigger recurring pain.
Brown argues that the trial court erred in overruling his objection to Dr. Hollis's testimony as to the validity of thermography as a diagnostic tool. He contends that the jury's verdict was prejudiced by Dr. Hollis's testimony, based on the thermogram, that Lawrence would experience recurring pain.
The question whether a witness is qualified to testify as an expert on a particular subject is largely within the discretion of the trial court, and that court's judgment on that question will not be disturbed absent an abuse of discretion.Phillips v. Alamed Co., 588 So.2d 463 (Ala. 1991). Here, the record shows that Dr. Hollis serves on the American Board of Medical Infrared Imaging, a multi-disciplinary group that includes both medical doctors and chiropractors and that establishes the standards for thermography. Not only is he a member of that Board, but Dr. Hollis also administers the Board's examination to candidates, including medical doctors, who seek certification in thermography. At trial, Dr. Hollis testified that over 4,000 articles published in medical and other journals, as well as statements issued by several distinguished medical boards, support the validity of thermography as a diagnostic tool. Based on this evidence, we find no error in the trial court's admission of Dr. Hollis's testimony.
Brown next argues that the jury's award of compensatory damages is not supported by the evidence and should be remitted. Brown points out that Lawrence's medical bills had totaled only about $8,000 at the time of trial, and he presents detailed statistics regarding compensatory damages awards rendered in other soft-tissue injury cases to show that the jury's award of damages in this case is unusually high.
In its order denying remittitur, the trial court noted that the amount of compensatory damages awarded might seem unusually large; however, the trial court emphasized that the evidence of Lawrence's suffering was extremely convincing and that the ramifications of his injury will likely continue. The jury heard expert testimony indicating that Lawrence has already suffered a 20% impairment to his body as a whole, without considering the likelihood of future degeneration due to the injury. The continuing pain generated from his neck and back injuries has sharply curtailed all physical activity for Lawrence; walking or driving a car for any length of time aggravates his injury, and he has had to forgo his normal agenda of sports and family activities. Although Lawrence had had no history of emotional problems, his pain and inability to continue a normal life have triggered a condition of severe clinical depression, which is being treated through medication. His physical and mental suffering has also seriously damaged his relationship with his wife and step-children. As the trial court noted in its remittitur order, the testimony concerning this suffering is particularly compelling.
A court may not substitute its judgment for that of the jury when the jury has returned a compensatory verdict that is clearly supported by the evidence, nor may it conditionally reduce a jury verdict merely because it believes that the verdict overcompensates the plaintiff. Pitt v. Century II,Inc., 631 So.2d 235 (Ala. 1993). The record contains detailed evidence of Lawrence's mental and physical suffering that resulted from the accident. Because the jury's award *Page 465 
of damages is supported by this evidence, the trial court properly denied the remittitur. The trial court's judgment is affirmed.
AFFIRMED.
HORNSBY, C.J., and MADDOX, SHORES and INGRAM, JJ., concur.