729 So.2d 262 (1998)
Dr. Melvin MASHNER
v.
W. Fred PENNINGTON, Jr.
No. 1970738.
Supreme Court of Alabama.
November 20, 1998.
Mark A. Newell and Susan Gunnells Smith of Janecky, Newell, Potts, Wilson, Smith & Masterson, Mobile, for appellant.
Harold A. Koons III of Ball & Koons, Bay Minette, for appellee.
KENNEDY, Justice.
On February 3, 1997, W. Fred Pennington, Jr., sued Dr. Melvin Mashner, a chiropractor, alleging the tort of outrage and breach of an implied contract.
Between February and June 1994, Pennington, his wife, their daughter, and their son went to Dr. Mashner for chiropractic adjustments. Before that time, Pennington and his wife had had difficulties in their marriage because of his wife's severe back injuries, which interfered with their sexual relations. Pennington and his wife told Dr. Mashner of their difficulties.
Subsequently, Dr. Mashner began an affair with Mr. Pennington's wife, which lasted from 1994 to March 2, 1996, when the Penningtons divorced. Mr. Pennington alleges that Dr. Mashner charged him for chiropractic services rendered for Mr. Pennington's wife, when his wife and Dr. Mashner were actually conducting an affair in Dr. Mashner's office.
Dr. Mashner filed his answer, specially averring that the Alabama Medical Liability Act applied in this case. The trial court held that the Act was not applicable. Dr. Masher petitioned this Court for a writ of mandamus, arguing that the Act applied and asking for an order directing the trial judge to apply it. We treated the mandamus petition as a petition for permission to appeal (see Rule 5, Ala. R.App. P.), and we granted that permission.
Effective May 17, 1996, the legislature "supplemented" the Medical Liability Act (see § 6-5-549.1(d)) to include licensed chiropractors as "health care providers," as that term is used in the Act. See, generally, § 6-5-549.1, Ala.Code 1975.
Section § 6-5-549.1(c) states:
"For the purposes of this section and Sections 6-5-548 and 6-5-549, the terms used shall have the meanings respectively ascribed to them in Section 6-5-542. Notwithstanding the foregoing, for purposes of this section and Sections 6-5-548 and 6-5-549, the term `health care provider' shall include any licensed optometrist or any licensed chiropractor and the term `professional corporation' shall include any optometric or chiropractic professional corporation or optometric or chiropractic professional association. However, subsection (e) does not apply to licensed optometrists and optometric professional corporations or licensed chiropractors *263 and chiropractic professional associations."
(Emphasis added.)
Subsection (e) of 6-5-549.1 provides that "This section and Sections 6-5-548 and 6-5-549 apply to all actions pending against health care providers at the time of the effective date of the sections."
Clearly, the legislature expressly excluded chiropractors and chiropractic professional associations from the operation of that section of the supplement that informs a court how and when the Medical Liability Act is to be applied to pending actions against chiropractors.
Dr. Mashner argues that because Mr. Pennington's lawsuit was not pending, i.e., had not been filed, when the "supplement" was adopted, the Medical Liability Act applies. Mr. Pennington argues that as to chiropractors the Medical Liability Act applies only to actions based on causes of action that "accrued" after the effective date of the supplement. It is undisputed that this action had not been filed at the time the supplement became effective. It is also undisputed that the cause of action underlying this lawsuit had accrued before the date on which the supplement became effective.
We agree with Dr. Mashner that the legislature intended to make the Medical Liability Act applicable to all cases filed against chiropractors after the effective date of the supplement, regardless of when the cause of action accrued. The language in the supplement excepting "pending" actions against chiropractors does not change the supplement's application to cases that had yet to be filed.
In Ex parte Huntsville Hospital, 540 So.2d 1344 (Ala.1988), the issue was whether the general forum non conveniens statute (§ 6-3-21.1) applied or whether the forum non conveniens provision of the Medical Liability Act (§ 6-5-546) applied in that particular malpractice case. Both statutes were part of the "Tort Reform" package of 1987 and became effective on the same day. The general forum non conveniens statute did not apply to any action "pending," i.e., filed, before the statute became effective on June 11, 1987. The legislature expressly stated in the Medical Liability Act of 1987 that the forum non conveniens provision applied to all malpractice causes of action "accruing" after June 11, 1987. In Huntsville Hospital, the cause of action had accrued prior to June 11, 1987, but the action had not been filed by that date. We held that because the malpractice cause of action had accrued before June 11, 1987, and because the Medical Liability Act specifically stated that its forum non conveniens provision applied to causes of action accruing after June 11, 1987, the general forum non conveniens statute applied.
Applying the logic of Huntsville Hospital to this present case, we conclude that the legislature intended for actions pending against chiropractors, i.e., those pending on the effective date of the "supplement" (because chiropractors were originally excluded from the Medical Liability Act of 1987), to be exempt from the application of the Medical Liability Act. However, those actions not yet filed were to be subject to the Act if the injury accrued after June 11, 1987, Ala.Code 1975, § 6-5-552.
Accordingly, we reverse the order holding that the Alabama Medical Liability Act did not apply to Mr. Pennington's claim, and we remand the action.
REVERSED AND REMANDED.
HOOPER, C.J., and MADDOX, HOUSTON, COOK, SEE, and LYONS, JJ., concur.
SHORES, J., concurs specially.
SHORES, Justice (concurring specially).
I agree with the majority's holding that § 6-5-549.1, Ala.Code 1975, which included licensed chiropractors within the definition of "health care provider" in the Medical Liability Act (the "Act"), applies to actions filed after May 17, 1996, the effective date of that section. Thus, the Act would apply to a medical malpractice action against a chiropractor that was filed after May 17, 1996. I write specially, however, to note that it is not really clear whether the facts of this case present a medical malpractice cause of action at all.
The Act applies only to medical malpractice actions; however, a plaintiff cannot avoid application of the Act by the use of creative pleadingit is the substance of the action, rather than the form, that is the touchstone *264 for determining whether an action is actually one alleging medical malpractice. Allred v. Shirley, 598 So.2d 1347 (Ala.1992); Benefield v. F. Hood Craddock Clinic, 456 So.2d 52 (Ala.1984); Sellers v. Edwards, 289 Ala. 2, 265 So.2d 438 (1972). Mr. Pennington, however, is not complaining that Dr. Mashner's actions or omissions in treating his wife caused her to suffer or aggravated any injury. Compare Allred, Benefield, supra; Bowlin Horn v. Citizens Hospital, 425 So.2d 1065 (Ala.1982). Indeed, Mr. Pennington seems to acknowledge that Dr. Mashner cured his wife's back injuries all too well. The gravamen of Mr. Pennington's breach-of-implied contract claim and his tort-of-outrage claim seems to be, rather, that he was billed for, and paid for, appointments for chiropractic services for his wife that he alleges Dr. Mashner never rendered, because, he says, Dr. Mashner and Mr. Pennington's wife were conducting a sexual affair during the appointments. I simply question whether such claims truly present a cause of action for medical malpractice. However, the trial court did not specifically address this issue, and the parties did not argue it in their briefs to this Court. Accordingly, we need not decide this issue at this stage of the proceedings.