786 So.2d 457 (2000)
Karin Jackie KNAPP
v.
Jason Barclay WILKINS.
1981139.
Supreme Court of Alabama.
September 8, 2000.
As Modified on Denial of Rehearing November 22, 2000.
*458 Joseph J. Boswell, Mobile, for appellant.
Charles J. Potts of Janecky Newell, P.C., Mobile, for appellee.
JOHNSTONE, Justice.
The plaintiff appeals from a judgment and other rulings in favor of the defendant in a tort action arising from a motorvehicle collision. Karin Jackie Knapp ("the plaintiff") sued Jason Barclay Wilkins ("the defendant") and John Wilkins for damages for injuries she sustained. The parties joined in a motion, which the trial court granted, to dismiss the plaintiff's claims against John Wilkins (but not Jason Wilkins). Thereafter, a jury tried the plaintiffs claims against the defendant Jason Wilkins and returned a verdict in favor of the defendant.
The plaintiff appeals to this Court on three grounds: 1) the trial court erred in refusing to allow the chiropractor who treated the plaintiff to state his opinion of the cause of the plaintiffs injuries; 2) the trial court erred in refusing to allow the plaintiff to call as an adverse witness Shafawnia Silvers, the defendant's girlfriend at the time of the accident; and 3) the trial court erred in refusing to ask, and in refusing to allow the plaintiff to ask, on voir dire whether the veniremembers who had insurance policies with the defendant's insurance company would be partial to the defendant because of the veniremembers' connections with the insurance company. The only issue addressed in this opinion is whether the trial court erred in refusing to allow the treating chiropractor to testify to the cause of the plaintiffs injuries. Our reversing the judgment of the trial court on this issue pretermits any discussion of the other issues raised by the plaintiff.
During the plaintiffs case-in-chief, plaintiffs counsel presented portions of the deposition testimony of the treating chiropractor, Dr. Robert Hutchins. Dr. Hutchins studied chiropractic at St. Louis *459 Community College and Logan College of Chiropractic. By the time he treated the plaintiff, Dr. Hutchins had practiced for 10 years as a licensed chiropractor. He had never treated the plaintiff before July 28, 1996, when she first sought his care for injuries she had sustained in this motorvehicle collision a week earlier, on July 21, 1996. (R. 138.) Dr. Hutchins "did a chiropractic, orthopaedic, and neurological examination of her injuries and concluded that she had sustained several soft tissue and other injuries." (R. 139.) During his treatment of the plaintiff, Dr. Hutchins referred her to Dr. White and Dr. Fleet, neurologists, and to Dr. Morgan, an orthodontist. Dr. Hutchins himself treated the plaintiff a total of 91 times. (R. 145.)
The plaintiff tried repeatedly and unsuccessfully to introduce Dr. Hutchins's deposition testimony on the cause of the injuries he had found and treated in the plaintiff. The pertinent questions, answers, objections, proffers, and rulings follow:
"[Plaintiff's counsel]: Do you have a summary of your records there that you can tell usLet me ask you this before we get into all of that. Do you have an opinion, Doctor, based on your background, training, and experience, and based on the history you took from Ms. Knapp, and based on your examination of Ms. Knapp, and your personal examination of Ms. Knapp, do you have an opinion as to whether or not the conditions for which you commenced treating her were caused by injuries she sustained in an accident on July 21, 1996? "[Defense counsel]: Judge, at this point we interject an objection as to the form of the question, also as to the qualifications of this individual to render such opinions. He's a chiropractor, he's not a medical doctor.

"The Court: I sustain the objection.

"[Plaintiff's counsel]: Judge, may I be heard for the record?
"The Court: Certainly.
"[Plaintiff's counsel]: I'm not asking for a medical opinion. I'm asking him does he have an opinion whether his chiropractic treatment he was rendering to her was the resultwas treatment for injuries sustained in the accident.

"The Court: And I still sustain the objection.

"[Plaintiff's counsel]: Go over to line ten on page thirteen.
"[Plaintiff's counsel] [Reading from the witness's deposition]: `I think I've covered this already, Doctor, but we're going to be using your deposition probably if this case goes to trial. You just testified as to all of the findings that you personally made, is that right?'
"[Dr. Hutchins]: `That's right.'
"[Plaintiff's counsel]: `Do you have an opinion as to whether all of those things that you testified, just testified about, were caused by injures she sustained in the subject accident?'

"[Defense counsel]: And again, Your Honor, we voiced an objection in the deposition as to the form of the question, as to the qualifications, and as well as lack of foundation.

"The Court: And again, I would sustain it.

"[Plaintiff's counsel]: May I state for the record again, Your Honor, that I am not asking him for any medical opinion. I'm asking him
"The Court: Yes, sir. You're asking him for a chiropractic opinion. I understand that.
"[Plaintiff's counsel]: Yes, sir.
"The Court: There's been no predicate laid as to whether or not he's competent to give such an opinion and secondly, I *460 don't know that a chiropractor is qualified to say if the injuries for which he is treating somebody were caused by a certain event or episode. So, the objection is sustained.

"[Plaintiff's counsel]: Your Honor, with that being made, I respectfully ask leave of the Court to state my position on this in response to Your Honor, because I have no further questions. If you're not going to let me ask the chiropractor about the treatment he gave her
"The Court: You can ask him about the treatment, but you cannot ask him, Mr. BoswellYou've been practicing law longer than I have.
"[Plaintiff's counsel]: Yes, sir.
"The Court: Whether or not, you know, those injuries resulted from a particular episode. And I'm not going to argue with you. Yes, sir, you can put it on the record.
"Members of the jury, would you step back there in the jury room for a minute.
"The Court: Okay. Let the record reflect that the jury has been excused and, Mr. Boswell, go ahead.
"[Plaintiff's counsel]: Thank you, Your Honor. Your Honor, I want to state for the record that it's in the record that hewhat his educational background is and the education to be a chiropractor, that he is a licensed chiropractor in the State of Alabama, that he has been practicing in that profession in the State of Alabama for the number of years that he said, that he undertook to examine Mrs. Knapp in his capacity as a chiropractor, that he undertook to perform further chiropractic medication or chiropractic attention to her in his skills as chiropractor. And what I'm asking him is based on the history that he took, his background, training, and experience does he have an opinion as to whether or not the condition he's treating her for was caused by the injuries sustained in the accident which is the subject of this lawsuit. I can ask him whether he's been giving her adjustments for the last twenty years and he can say yes, but if I can't connect it up to this lawsuit his opinion is useless to me. I object to it.
"The Court: Your objection is noted for the record.
"[Plaintiff's counsel]: So, if Your Honor is not going to allow me to ask him to give an opinion as to whether his treatment was related to injuries sustained in this accident, then the deposition is of no use to me and I have no further questions to this matter.
"The Court: Bring the jury back in, Lesley.
"Jury present. Whereupon, the deposition of Robert C. Hutchins was read in open court. Questions read by Mr. Potts, answer read by Mr. Soutullo.
"[Defense counsel]: If you would, turn to page fifteen, beginning with line twenty, a question to you.
"[Plaintiff's counsel] [Reading from the witness's deposition]: `How many times did you have occasion to see her, Mrs. Knapp, between July 29, 1996 and October 1, 1997?'
"[Dr. Hutchins]: `Ninety-one times.'
"[Defense counsel]: `That's all I have.'"
(R. 140-45.) (Emphasis added.) The following day the plaintiffs counsel continued:
"[Plaintiff's counsel]: At this time, Your Honor, I ask for leave to read portions of the deposition testimony of Dr. Hutchins, the chiropractor, and ask his opinion as to causation to conditions he was treating her for.

"The Court: You obviously have the right to read those portions of his deposition *461 that you deem appropriate. However, even after reviewing the authority that you have provided the Court, I don't think as a matter of law a chiropractor is qualified to testify as to the cause of an injury.

"[Plaintiff's counsel]: Just for the record, Your Honor, so I can make sure that I understand you'reeven if he testifies that the opinion he is giving about causation affects soft tissue injuries that is within the field for which he will testify that he is trained to do and that that was what he was doing, that he's not trying to give any opinion as to a medical diagnosis. Is that Your Honor's ruling?

"The Court: The Court's ruling is that a chiropractor who is not a medical doctor is not qualified to render an opinion as to the causation of an injury. Any testimony that you wish to proffer which goes to his findings and his prognosis is certainly admissible.
"[Plaintiff's counsel]: Thank you, Your Honor. We will read what you allow us to read. Your Honor, may I
"The Court: Certainly.
". . . .
"[Plaintiff's counsel]: I think I've covered this already, Doctor, but we're going to be using your deposition probably if this case goes to trial. You just testified as to all of the findings that you personally made, is that right?

"[Dr. Hutchins]: That's right.

"[Plaintiff's counsel]: Do you have an opinion as to whether all of those things that you testified, just testified about, were caused by injuries she sustained in the subject accident?

"[Defense counsel]: Objection, Your Honor.
"The Court: It would be sustained for reasons previously stated."
(R. 235-39.) (Emphasis added.)
Rule 702, Ala.R.Evid., provides:
"If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise."
See also § 12-21-160, Ala.Code 1975. "The question whether a witness is qualified to testify as an expert on a particular subject is largely within the discretion of the trial court, and that court's judgment on that question will not be disturbed absent an abuse of discretion." Brown v. Lawrence, 632 So.2d 462, 464 (Ala.1994). See also Husby v. South Alabama Nursing Home, Inc., 712 So.2d 750, 753 (Ala. 1998). However,
"`[t]he criterion for admission of expert testimony is that the witness, by study, practice, experience or observation as to the particular subject, should have acquired a knowledge beyond that of ordinary witnesses.'
"`... To qualify as an expert a witness does not have to be shown to be infallible or possessing the highest degree of skill.'
"It is also declared that `the nature of a wound or injury, its probable cause and effect, may be shown by expert medical witnesses or witnesses shown to be familiar with such questions...."
Kitchens v. State, 31 Ala.App. 239, 241, 14 So.2d 739, 741 (1943) (citation omitted) (emphasis added).
Section 34-24-120, Ala.Code 1975, provides:
"(a) The term `chiropractic,' when used in this article, is hereby defined as *462 the science and art of locating and removing without the use of drugs or surgery any interference with the transmission and expression of nerve energy in the human body by any means or methods as taught in schools or colleges of chiropractic which are recognized by the State Board of Chiropractic Examiners.
"(b) Any chiropractor who has been certified and licensed by the State Board of Chiropractic Examiners may examine, analyze and diagnose[1] the human body and its diseases by the use of any physical, clinical, thermal or radonic method, and the use of X-ray diagnosing, and may use any other general method of examination for diagnosis and analysis taught in any school of chiropractic recognized by the State Board of Chiropractic Examiners."
(Emphasis added.) Our case of Mashner v. Pennington, 729 So.2d 262 (Ala.1998), recognizes that a qualified licensed chiropractor is a "health care provider" under the Medical Liability Act, § 6-5-549.1(c), Ala.Code 1975. "A qualified licensed practitioner of chiropractic is competent to testify as a medical expert in his limited area of the healing art and offer an opinion of reasonable certainty as to whether or not an injury he is qualified to treat, and has treated, is permanent and will require future treatment". Hoefer v. Snellgrove, 48 Ala.App. 11, 15, 261 So.2d 426, 429 (1971), rev'd on other grounds, 288 Ala. 407, 261 So.2d 431 (1972).
An expert witness may testify to the ultimate issue of causation in a tort action. Macon County Comm'n v. Sanders, 555 So.2d 1054 (Ala.1990); and Harrison v. Wientjes, 466 So.2d 125 (Ala.1985). A treating physician is competent to give his opinion of the cause of his patient's injuries. St. Louis & S.F.R.R. v. Savage, 163 Ala. 55, 50 So. 113 (1909).
"In giving his professional opinion as to the extent and nature of the injury, [a physician] may state the basis upon which he has formed the opinion, his personal examination, including the symptoms given by his patient, their beginning, sequence, and continuity, the fact of a hurt or injury, and its character. These involve statements to the physician in the nature of past events and supposed causes. They must not go into the question of responsibility for the injury. They are limited to purposes of diagnosis, and come in evidence along with and as part bases for his opinion, admitted out of necessity in allowing a proper field for medical science in legal administration; the probative force of the opinion given depending on the verity of the basis on which it is formed as found by the jury."
Lowery v. Jones, 219 Ala. 201, 202, 121 So. 704, 706 (1929) (emphasis added).
In support of the plaintiff's claim that chiropractor Dr. Hutchins was competent to testify about the cause of the plaintiff's injuries, she cites Hoefer v. Snellgrove, supra. In Hoefer, the trial court had excluded the chiropractor's testimony of his opinion about the permanency of the patient-plaintiff's back injury and about the residual effects of his back injury. The rationale of the trial court was that the chiropractor was not qualified, and that the medical doctor who treated the plaintiff was more qualified, to testify about these matters. Hoefer, 48 Ala.App. at 14, 261 So.2d at 428. Reversing the trial court, the Court of Civil Appeals held that a qualified chiropractor could testify as an expert about the extent and the permanency *463 of his patient's injury and about the present and future treatment of his patient. Id.
Although the issue in Hoefer is not identical to that in the case before us in that Hoefer does not specifically address whether a chiropractor can testify to the cause of his patient's injuries, Hoefer and the other cases and statutes cited in this opinion, considered together, support the proposition that a treating doctor, chiropractic or medical, is qualified to testify about the nature, the extent, the treatment, and the cause of his patient's injuries. For example, in Brown v. Lawrence, 632 So.2d 462 (Ala.1994), the chiropractor who treated the plaintiff for injuries she suffered in an automobile accident with the defendant was allowed to testify, apparently without objection on these particular points, that "the injury from the accident exacerbated his pre-existing back condition," and that the plaintiffs "cartilage [was] scarred from the accident and ... would probably trigger recurring pain." Brown, 632 So.2d at 464. See also, e.g., Mississippi Farm Bureau Mut. Ins. Co. v. Garrett, 487 So.2d 1320 (Miss.1986); and Badke v. Barnett, 35 A.D.2d 347, 316 N.Y.S.2d 177 (1970) (holding that a treating chiropractor is qualified to give his expert opinion regarding diagnosis, causation, and prognosis of the plaintiffs injury).
On the basis of the foregoing law, we hold that Dr. Hutchins's education, licensure, and practice as a chiropractor, and his examination and treatment of his patient in his capacity as a chiropractor, qualified him as competent to testify to the cause of the particular injuries he treated. Thus the rulings of the trial court excluding Dr. Hutchins's testimony about causation on the ground "that a chiropractor who is not a medical doctor is not qualified to render an opinion as to the causation of an injury" constitute error to reverse. The judgment of the trial court is reversed and the cause remanded for a new trial.
REVERSED AND REMANDED.
HOUSTON, COOK, LYONS, BROWN, and ENGLAND, JJ., concur.
HOOPER, C.J., and MADDOX and SEE, JJ., dissent.
MADDOX, Justice (dissenting).
I do not believe Alabama law permits a chiropractor to testify as an expert witness on the causation of an injury. Therefore, I must respectfully dissent.
In my opinion, the trial judge properly refused to admit the testimony of Dr. Robert Hutchins, a chiropractor, regarding the cause of the plaintiffs alleged injuries. I agree that in certain circumstances a properly licensed and qualified chiropractor may be allowed to testify as to the extent, the permanency, and the duration of a patient's injuries, see Hoefer v. Snellgrove, 48 Ala.App. 11, 261 So.2d 426 (1971), as long as a proper predicate is laid, but I disagree with the proposition that a chiropractor is qualified to testify about the cause of a patient's injuries.
I find this case analogous to Kriewitz v. Savoy Heating & Air Conditioning Co., 396 So.2d 49 (Ala.1981), in which I wrote the Court's opinion. In Kriewitz, the trial court allowed two clinical psychologists to testify that the plaintiffs had suffered brain damage and, in fact, one of the psychologists was permitted to state that one of the plaintiffs had "organic brain syndrome." 396 So.2d at 52. However, the trial court refused to allow the psychologists to testify as to the cause of the plaintiffs' conditions. This court held, based on § 34-26-1, Ala.Code 1975, which details certain rights and limitations regarding psychologists in Alabama, that the *464 trial court did not err in refusing to permit the psychologists to testify as experts regarding the cause of the plaintiffs' conditions.
Sections 34-24-120 and 34-24-122 detail similar rights and limitations regarding chiropractors in Alabama. Given those statutes, I cannot agree that a chiropractor, who does not hold an "unlimited license to practice the healing arts in this state," may testify as to the cause of a patient's injuries. See Kriewitz, 396 So.2d at 53; and Hoefer, 48 Ala.App. at 15, 261 So.2d at 429 ("A qualified licensed practitioner of chiropractic is competent to testify as a medical expert in his limited area of the healing art and offer an opinion of reasonable certainty as to whether or not an injury he is qualified to treat, and has treated, is permanent and will require future treatment." (emphasis added)), rev'd on other grounds, 288 Ala. 407, 261 So.2d 431 (1972).
Even assuming, however, that the trial court erred in refusing to allow the chiropractor to testify regarding the cause of the plaintiffs alleged injuries, I would hold that the error was harmless because the same evidence that the trial court refused to admit through the chiropractor's testimony regarding causation was admitted through the testimony of two other medical experts (Dr. William Fleet, a neurologist; and Dr. John Morgan, an orthodontist). Apparently the jury was not convinced that the defendant's alleged negligence was the cause of the plaintiffs injuries, because the jury returned a verdict in favor of the defendant.
HOOPER, C.J., concurs.
NOTES
[1] Black's Law Dictionary 312 (6th ed. 1991), defines "diagnosis" as "[a] medical term, meaning the discovery of the source of a patient's illness or the determination of nature of his disease from the study of its symptoms." (Emphasis added.)