On Application for Rehearing
The opinion of January 9, 2004, is withdrawn, and the following is substituted therefor.
On June 22, 2001, Edna Jordan, individually and as personal representative of the estate of James R. Jordan, Sr. ("James"), sued Continental Airlines, Inc. ("Continental"), and the Birmingham Airport Authority ("BAA"), alleging counts of negligence, loss of consortium, and breach of contract as a result of James's death. Continental and BAA answered. On August 30, 2001, BAA filed a motion to dismiss the negligence claim against it based on immunity provided to airport authorities pursuant to § 4-3-7, Ala. Code 1975. The trial court granted BAA's motion for a partial dismissal on September 28, 2001.
On September 28, 2002, Continental and BAA moved the trial court for a summary judgment. In support of the motion for a summary judgment, Continental and BAA attached the deposition testimony of Edna Jordan ("Jordan") and Yvonne Jordan ("Yvonne") and the affidavits of Dawn Segura, a Continental employee, and Dr. Robert Slaughter. Jordan responded to the motion for a summary judgment on November 13, 2002. Jordan attached the affidavits of James R. Jordan, Jr., Dwayne Jordan, and William J. Ray, Ph.D., to her response. On November 8, 2002, Continental and BAA moved to strike the affidavit of Ray, contending that Ray was not qualified to offer medical opinions relating to James's cause of death. On April 17, 2003, Jordan filed a second affidavit executed by Ray. Thereafter, the defendants moved to strike that second affidavit.
On May 6, 2003, the trial court entered a summary judgment in favor of Continental and BAA, stating:
 "This matter came on for hearing on the motion of the defendants . . . for summary judgment. Additionally to be considered is whether the Court should consider the testimony, by affidavits, of William J. Ray, Ph.D., filed by [Jordan] in response to the summary judgment motion.
 "[Jordan's] deceased husband, James R. Jordan, Sr., (hereinafter `Mr. Jordan'), was a passenger on a Continental Airlines flight which landed at the Birmingham Airport. At some point prior to exiting the airplane (there is some dispute as to when the request was made), Mr. Jordan requested, or a family member on his behalf requested, a wheelchair for his use in the airport. A call went out over the airport loudspeaker for a wheelchair to be brought to the gate, but no wheelchair ever arrived. Mr. Jordan, accompanied by family members, walked to the airport entrance and was driven home. He was later taken to the hospital where he subsequently died from a cerebral hemorrhage. The issue before the court is whether there is sufficient evidence that the failure to provide a wheelchair, by either defendant, caused Mr. Jordan injury so that there is a genuine issue of material fact to submit to the jury. If the Court allows the testimony of William J. Ray, Ph.D. (hereinafter `Ray'), then there is a factual issue which must go to the jury; if not, the motion for summary judgment is due to be granted.
 "The Court has considered the well-argued briefs filed by the parties in this action and the case law cited therein. The Supreme Court's decision in Knapp v. Wilkins, 786 So.2d 457 (Ala. 2000), modified slightly its holding in Kriewitz v. Savoy Heating Air Conditioning Co., 396 So.2d 49 (Ala. 1981). Kriewitz held that the trial court did not err in not allowing clinical psychologists to testify *Page 449 
as to causation, limiting causation testimony to medical doctors. Knapp modified that holding to permit, under the circumstances of that case, a chiropractor to testify as to causation of a medical condition.
 "The circumstances in Knapp are instructive. The chiropractor in Knapp was licensed under Alabama law to diagnose certain conditions pursuant to § 34-24-120, Ala. Code 1975. Ray is not so licensed. In addition, the chiropractor in Knapp treated the plaintiff multiple times, beginning shortly after the incident in question. Such is not the case here. Ray never treated and, indeed, could not have treated Mr. Jordan. The affidavits submitted by Ray show him to be a well-qualified neurological scientist, one who is clearly qualified to testify as an expert in some areas. However, he does not have experience directly treating patients, and, therefore, is not qualified to testify as an expert as to causation in this case.
 "[The] Defendants support their motion for summary judgment with the affidavit of Robert D. Slaughter, M.D., a board certified neurologist. In his affidavit, Dr. Slaughter states:
 "`The fact that James Jordan may have walked, on his own or with some assistance, through some portion of the airport did not cause or contribute to cause the fatal cerebral hemorrhage. There is no medical basis to say with any degree of medical certainty that his walking through some portion of the airport caused or contributed to cause the onset of the hemorrhage. There is not medical basis to conclude that, but for having to walk through some portion of the airport, Mr. Jordan would not have suffered the hemorrhage, that the hemorrhage would have been less severe, or that he would not have died from the hemorrhage. To the contrary, I believe his fatal cerebral hemorrhage was caused solely by physiologic and/or genetic conditions that pre-existed the flight in question.'
 "The only evidence offered to counter the affidavit of Dr. Slaughter are the two affidavits of Ray. Because the Court is of the opinion that Ray is not qualified to give an opinion as to medical causation in this case, the affidavits of William J. Ray, Ph.D. are STRICKEN. Therefore, there is not evidence to dispute the affidavit of Dr. Slaughter.
 "For the reasons set forth herein, the Court finds that there is no genuine issue of material fact and the defendants are entitled to a judgment as a matter of law."
(Emphasis and capitalization in original.) Jordan appealed from the summary judgment. This case was transferred to this court by the supreme court, pursuant to § 12-2-7(6), Ala. Code 1975.
A motion for a summary judgment is properly granted where no genuine issue of material fact exists and the moving party is entitled to a judgment as a matter of law. Rule 56, Ala. R. Civ. P.; Bussey v. John Deere Co., 531 So.2d 860 (Ala. 1988). "When the movant makes a prima facie showing that those two conditions are satisfied, the burden shifts to the nonmovant to present `substantial evidence' creating a genuine issue of material fact." Ex parte Alfa Mut. Gen. Ins. Co., 742 So.2d 182, 184
(Ala. 1999) (citing Bass v. SouthTrust Bank of Baldwin County,538 So.2d 794, 797-98 (Ala. 1989)). "Substantial evidence" is "evidence of such a weight and quality that fair-minded persons in the exercise of impartial judgment can reasonably infer the existence of the fact sought to be proved." West v. FoundersLife Assurance Co. of Florida, *Page 450 547 So.2d 870, 871 (Ala. 1989). In reviewing a summary judgment, this court must review the record in a light most favorable to the nonmovant and must resolve all reasonable doubts concerning the existence of a genuine issue of material fact against the movant.Hanners v. Balfour Guthrie, Inc., 564 So.2d 412 (Ala. 1990). "Mere conclusory allegations or speculation that fact issues exist will not defeat a properly supported summary judgment motion, and bare argument or conjecture does not satisfy the nonmoving party's burden to offer substantial evidence to defeat the motion." Blackburn v. State Farm Auto. Ins. Co.,652 So.2d 1140, 1142 (Ala. 1994).
The pertinent undisputed facts are as follows. James was 68 years old at the time of his death. He suffered from hypertension and walked with a cane as a result of a leg injury. On June 29, 1999, James boarded Continental flight 1594, departing from Texas and arriving in Birmingham, Alabama. Edna Jordan, Yvonne, and Yvonne's son waited for James to exit the airplane upon his arrival in Birmingham. When James did not exit the airplane, Jordan walked down the ramp to meet him. James appeared to be flushed. When asked how he was, James responded that he was "alright."
There is some dispute as to whether a wheelchair was requested for James in advance of the airplane's arrival in Birmingham; however, after the airplane arrived in Birmingham, a flight attendant with Continental offered to look for a wheelchair to aid James in deboarding the airplane and exiting the airport. The flight attendant did not return. Jordan assisted James through the ramp and into the passenger waiting area. A pilot then approached Jordan and volunteered to locate a wheelchair but did not return. Yvonne looked for a wheelchair at nearby gates but could not find one.
Jordan and Yvonne assisted James into a vehicle parked in a handicapped parking space immediately outside of the airport. Once in the car, Jordan became concerned about James's health and offered to take him to the hospital. James declined to go to the hospital, and Jordan proceeded to drive him home. Once at home, Yvonne checked James's blood pressure and called for emergency medical assistance. James was transported to the hospital, where he was diagnosed as having suffered from a right thalamic hemorrhage extending into the mid-brain (i.e., a stroke). James was placed on life support and died eight days later.
Jordan contends on appeal that the trial court erred in striking the affidavit testimony of Ray. Specifically, Jordan asserts that Ray is qualified to offer expert medical testimony although he is not a licensed medical doctor and has no experience treating patients. We first note that "[t]he question whether a witness is qualified to testify as an expert on a particular subject is largely within the discretion of the trial court, and that court's judgment on that question will not be disturbed absent an abuse of discretion." Brown v. Lawrence,632 So.2d 462, 464 (Ala. 1994).
The affidavits of Ray submitted to the trial court in support of Jordan's response to the defendants' motion for a summary judgment reveal that Ray has a Ph.D. in neuroscience and is employed as a senior research biochemist for Merck and Company, Inc. Ray reviewed James's medical records and the deposition testimony of Jordan and Yvonne. Ray stated that he was qualified to assess a patient's medical condition based on the patient's medical records. Based on his review of James's medical records and Jordan's and Yvonne's deposition testimony, Ray concluded that James's stroke "began prior to his exiting the aircraft or jetway and continued thereafter." *Page 451 
Ray further concluded that James overexerted himself when he had to leave the airport without the assistance of a wheelchair and that, as a result, James had increased blood flow that "exacerbated an already critical emergency cerebral situation."
Jordan asserts on appeal that expert medical testimony is not limited to testimony elicited from persons licensed to practice medicine. We agree.
 "`It is not the law that only a medical doctor may testify as to physical symptoms on the human being. If the witness is shown to have special qualification in that particular field and knowledge of the subject beyond that of the average laymen so as to give reliable testimony, he is not disqualified.'"
Bell v. Hart, 516 So.2d 562, 567 (Ala. 1987) (quoting Police Firemen's Ins. Ass'n v. Mullins, 260 Ala. 173, 179,69 So.2d 261, 266 (1953)) (emphasis omitted). However, as a general rule, decisions as to a witness's competency to testify as an expert on a particular subject are within the sound discretion of the trial court. Brown v. Lawrence, supra; Ward v. Dale County FarmersCoop., 472 So.2d 978 (Ala. 1985). Although Ray was clearly qualified in the field of neuroscience, the affidavits of Ray support the trial court's determination that he was not qualified to testify as to the actual cause of James's death.
Moreover, the affidavits indicate that Ray's opinion as to James's cause of death is based on mere speculation and conjecture. In his first affidavit, Ray states:
 "The deposition testimony of [Jordan] and Yvonne . . . as to the symptoms exhibited by [James] indicates that [James's] stoke began prior to his exiting the aircraft or jetway and continued thereafter. . . . In my scientific opinion, the symptoms of physical weakness, a flushed appearance, slurred speech, and favoring the left side confirm a stroke in progress and should have been readily observable by anyone who saw [James] during this period of time. Had [James] received immediate treatment at this juncture (or earlier) either medically, with anti-edema agents, and/or surgically, the herniation and resulting damage to his brain might have been minimized sufficiently to save his life."
(Emphasis added.)
"A witness's testimony cannot be based on mere speculation and conjecture." Townsend v. General Motors Corp., 642 So.2d 411,423 (Ala. 1994), citing Alabama Power Co. v. Robinson,447 So.2d 148, 153-54 (Ala. 1983) ("as a theory of causation, a conjecture is simply an explanation consistent with known facts or conditions, but not deducible from them as a reasonable inference"). Although the affidavits of Ray submitted in support of Jordan's response to the defendants' motion for a summary judgment indicate that Ray has an academic background in neuroscience, they fail to demonstrate that his knowledge regarding this particular incident went beyond speculation. Therefore, we cannot say that the trial court erred by striking the affidavits of Ray.
Jordan further contends on appeal that she submitted substantial evidence of the existence of a genuine issue of material fact with regard to her breach-of-contract claim arising out of the defendants' failure to provide a wheelchair. Specifically, Jordan avers that the damages sought pursuant to the breach-of-contract claim do not sound in tort, and, thus, she argues, the breach-of-contract claim survived the death of James. Section 6-5-462, Ala. Code 1975, provides: *Page 452 
 "In all proceedings not of an equitable nature, all claims upon which an action has been filed and all claims upon which no action has been filed on a contract, express or implied, and all personal claims upon which an action has been filed, except for injuries to the reputation, survive in favor of and against personal representatives; and all personal claims upon which no action has been filed survive against the personal representative of a deceased tortfeasor."
In count 4 of her complaint, Jordan sought damages as a result of the defendants' alleged breach of contract, stating that James "was caused to suffer the reasonably foreseeable damages of pain and suffering, mental anguish, humiliation, indignation, embarrassment, and undue worry and concern" as a result of not being provided a wheelchair. "As a general rule, mental anguish is not a recoverable element of actual damages growing out of a breach of contract." Sanford v. Western Life Ins. Co.,368 So.2d 260, 264 (Ala. 1979) (citing Birmingham Waterworks Co. v.Vinter, 164 Ala. 490, 51 So. 356 (1910)). However, an exception to this rule exists
 "`[w]here the contractual duty or obligation is so coupled with matters of mental concern or solicitude, or with the feelings of the party to whom the duty is owed, that a breach of that duty will necessarily or reasonably result in mental anguish or suffering, [and] it is just that damages therefor be taken into consideration and awarded.'"
Sanford, 368 So.2d at 264 (quoting F. Becker Asphaltum RoofingCo. v. Murphy, 224 Ala. 655, 657, 141 So. 630, 631 (1932)).
The record on appeal indicates that the facts in this case do not support Jordan's contention on appeal that the damages sought fall within the exception to the general rule that a party cannot recover mental-anguish damages caused by an alleged breach of contract. Therefore, the summary judgment of the trial court in favor of Continental and BAA on Jordan's breach-of-contract claim is due to be affirmed.
OPINION of JANUARY 9, 2004, WITHDRAWN; OPINION SUBSTITUTED; APPLICATION FOR REHEARING OVERRULED; AFFIRMED.
PITTMAN J., concurs.
MURDOCK, J., concurs in the result, without writing.
YATES, P.J., dissents, with writing, which CRAWLEY, J., joins.