893 So.2d 446 (2004)
Edna JORDAN, individually and as personal representative of the estate of James R. Jordan, Sr., deceased
v.
CONTINENTAL AIRLINES, INC., and Birmingham Airport Authority.
2020870.
Court of Civil Appeals of Alabama.
March 12, 2004.
Certiorari Denied June 11, 2004.
*447 John P. Graves of Law Offices of Frank R. Farish, Birmingham, for appellant.
Lawrence B. Clark and William L. Waudby of Adams & Reese/Lange Simpson, LLC, Birmingham, for appellees.
Alabama Supreme Court 1031000.

*448 On Application for Rehearing

THOMPSON, Judge.
The opinion of January 9, 2004, is withdrawn, and the following is substituted therefor.
On June 22, 2001, Edna Jordan, individually and as personal representative of the estate of James R. Jordan, Sr. ("James"), sued Continental Airlines, Inc. ("Continental"), and the Birmingham Airport Authority ("BAA"), alleging counts of negligence, loss of consortium, and breach of contract as a result of James's death. Continental and BAA answered. On August 30, 2001, BAA filed a motion to dismiss the negligence claim against it based on immunity provided to airport authorities pursuant to § 4-3-7, Ala.Code 1975. The trial court granted BAA's motion for a partial dismissal on September 28, 2001.
On September 28, 2002, Continental and BAA moved the trial court for a summary judgment. In support of the motion for a summary judgment, Continental and BAA attached the deposition testimony of Edna Jordan ("Jordan") and Yvonne Jordan ("Yvonne") and the affidavits of Dawn Segura, a Continental employee, and Dr. Robert Slaughter. Jordan responded to the motion for a summary judgment on November 13, 2002. Jordan attached the affidavits of James R. Jordan, Jr., Dwayne Jordan, and William J. Ray, Ph.D., to her response. On November 8, 2002, Continental and BAA moved to strike the affidavit of Ray, contending that Ray was not qualified to offer medical opinions relating to James's cause of death. On April 17, 2003, Jordan filed a second affidavit executed by Ray. Thereafter, the defendants moved to strike that second affidavit.
On May 6, 2003, the trial court entered a summary judgment in favor of Continental and BAA, stating:
"This matter came on for hearing on the motion of the defendants... for summary judgment. Additionally to be considered is whether the Court should consider the testimony, by affidavits, of William J. Ray, Ph.D., filed by [Jordan] in response to the summary judgment motion.
"[Jordan's] deceased husband, James R. Jordan, Sr., (hereinafter `Mr. Jordan'), was a passenger on a Continental Airlines flight which landed at the Birmingham Airport. At some point prior to exiting the airplane (there is some dispute as to when the request was made), Mr. Jordan requested, or a family member on his behalf requested, a wheelchair for his use in the airport. A call went out over the airport loudspeaker for a wheelchair to be brought to the gate, but no wheelchair ever arrived. Mr. Jordan, accompanied by family members, walked to the airport entrance and was driven home. He was later taken to the hospital where he subsequently died from a cerebral hemorrhage. The issue before the court is whether there is sufficient evidence that the failure to provide a wheelchair, by either defendant, caused Mr. Jordan injury so that there is a genuine issue of material fact to submit to the jury. If the Court allows the testimony of William J. Ray, Ph.D. (hereinafter `Ray'), then there is a factual issue which must go to the jury; if not, the motion for summary judgment is due to be granted.
"The Court has considered the well-argued briefs filed by the parties in this action and the case law cited therein. The Supreme Court's decision in Knapp v. Wilkins, 786 So.2d 457 (Ala.2000), modified slightly its holding in Kriewitz v. Savoy Heating & Air Conditioning Co., 396 So.2d 49 (Ala.1981). Kriewitz held that the trial court did not err in not allowing clinical psychologists to testify *449 as to causation, limiting causation testimony to medical doctors. Knapp modified that holding to permit, under the circumstances of that case, a chiropractor to testify as to causation of a medical condition.
"The circumstances in Knapp are instructive. The chiropractor in Knapp was licensed under Alabama law to diagnose certain conditions pursuant to § 34-24-120, Ala.Code 1975. Ray is not so licensed. In addition, the chiropractor in Knapp treated the plaintiff multiple times, beginning shortly after the incident in question. Such is not the case here. Ray never treated and, indeed, could not have treated Mr. Jordan. The affidavits submitted by Ray show him to be a well-qualified neurological scientist, one who is clearly qualified to testify as an expert in some areas. However, he does not have experience directly treating patients, and, therefore, is not qualified to testify as an expert as to causation in this case.
"[The] Defendants support their motion for summary judgment with the affidavit of Robert D. Slaughter, M.D., a board certified neurologist. In his affidavit, Dr. Slaughter states:
"`The fact that James Jordan may have walked, on his own or with some assistance, through some portion of the airport did not cause or contribute to cause the fatal cerebral hemorrhage. There is no medical basis to say with any degree of medical certainty that his walking through some portion of the airport caused or contributed to cause the onset of the hemorrhage. There is not medical basis to conclude that, but for having to walk through some portion of the airport, Mr. Jordan would not have suffered the hemorrhage, that the hemorrhage would have been less severe, or that he would not have died from the hemorrhage. To the contrary, I believe his fatal cerebral hemorrhage was caused solely by physiologic and/or genetic conditions that pre-existed the flight in question.'
"The only evidence offered to counter the affidavit of Dr. Slaughter are the two affidavits of Ray. Because the Court is of the opinion that Ray is not qualified to give an opinion as to medical causation in this case, the affidavits of William J. Ray, Ph.D. are STRICKEN. Therefore, there is not evidence to dispute the affidavit of Dr. Slaughter.
"For the reasons set forth herein, the Court finds that there is no genuine issue of material fact and the defendants are entitled to a judgment as a matter of law."
(Emphasis and capitalization in original.) Jordan appealed from the summary judgment. This case was transferred to this court by the supreme court, pursuant to § 12-2-7(6), Ala.Code 1975.
A motion for a summary judgment is properly granted where no genuine issue of material fact exists and the moving party is entitled to a judgment as a matter of law. Rule 56, Ala. R. Civ. P.; Bussey v. John Deere Co., 531 So.2d 860 (Ala.1988). "When the movant makes a prima facie showing that those two conditions are satisfied, the burden shifts to the nonmovant to present `substantial evidence' creating a genuine issue of material fact." Ex parte Alfa Mut. Gen. Ins. Co., 742 So.2d 182, 184 (Ala.1999) (citing Bass v. SouthTrust Bank of Baldwin County, 538 So.2d 794, 797-98 (Ala.1989)). "Substantial evidence" is "evidence of such a weight and quality that fair-minded persons in the exercise of impartial judgment can reasonably infer the existence of the fact sought to be proved." West v. Founders Life Assurance Co. of Florida, 547 *450 So.2d 870, 871 (Ala.1989). In reviewing a summary judgment, this court must review the record in a light most favorable to the nonmovant and must resolve all reasonable doubts concerning the existence of a genuine issue of material fact against the movant. Hanners v. Balfour Guthrie, Inc., 564 So.2d 412 (Ala.1990). "Mere conclusory allegations or speculation that fact issues exist will not defeat a properly supported summary judgment motion, and bare argument or conjecture does not satisfy the nonmoving party's burden to offer substantial evidence to defeat the motion." Blackburn v. State Farm Auto. Ins. Co., 652 So.2d 1140, 1142 (Ala.1994).
The pertinent undisputed facts are as follows. James was 68 years old at the time of his death. He suffered from hypertension and walked with a cane as a result of a leg injury. On June 29, 1999, James boarded Continental flight 1594, departing from Texas and arriving in Birmingham, Alabama. Edna Jordan, Yvonne, and Yvonne's son waited for James to exit the airplane upon his arrival in Birmingham. When James did not exit the airplane, Jordan walked down the ramp to meet him. James appeared to be flushed. When asked how he was, James responded that he was "alright."
There is some dispute as to whether a wheelchair was requested for James in advance of the airplane's arrival in Birmingham; however, after the airplane arrived in Birmingham, a flight attendant with Continental offered to look for a wheelchair to aid James in deboarding the airplane and exiting the airport. The flight attendant did not return. Jordan assisted James through the ramp and into the passenger waiting area. A pilot then approached Jordan and volunteered to locate a wheelchair but did not return. Yvonne looked for a wheelchair at nearby gates but could not find one.
Jordan and Yvonne assisted James into a vehicle parked in a handicapped parking space immediately outside of the airport. Once in the car, Jordan became concerned about James's health and offered to take him to the hospital. James declined to go to the hospital, and Jordan proceeded to drive him home. Once at home, Yvonne checked James's blood pressure and called for emergency medical assistance. James was transported to the hospital, where he was diagnosed as having suffered from a right thalamic hemorrhage extending into the mid-brain (i.e., a stroke). James was placed on life support and died eight days later.
Jordan contends on appeal that the trial court erred in striking the affidavit testimony of Ray. Specifically, Jordan asserts that Ray is qualified to offer expert medical testimony although he is not a licensed medical doctor and has no experience treating patients. We first note that "[t]he question whether a witness is qualified to testify as an expert on a particular subject is largely within the discretion of the trial court, and that court's judgment on that question will not be disturbed absent an abuse of discretion." Brown v. Lawrence, 632 So.2d 462, 464 (Ala.1994).
The affidavits of Ray submitted to the trial court in support of Jordan's response to the defendants' motion for a summary judgment reveal that Ray has a Ph.D. in neuroscience and is employed as a senior research biochemist for Merck and Company, Inc. Ray reviewed James's medical records and the deposition testimony of Jordan and Yvonne. Ray stated that he was qualified to assess a patient's medical condition based on the patient's medical records. Based on his review of James's medical records and Jordan's and Yvonne's deposition testimony, Ray concluded that James's stroke "began prior to his exiting the aircraft or jetway and continued thereafter." *451 Ray further concluded that James overexerted himself when he had to leave the airport without the assistance of a wheelchair and that, as a result, James had increased blood flow that "exacerbated an already critical emergency cerebral situation."
Jordan asserts on appeal that expert medical testimony is not limited to testimony elicited from persons licensed to practice medicine. We agree.
"`It is not the law that only a medical doctor may testify as to physical symptoms on the human being. If the witness is shown to have special qualification in that particular field and knowledge of the subject beyond that of the average laymen so as to give reliable testimony, he is not disqualified.'"
Bell v. Hart, 516 So.2d 562, 567 (Ala.1987)(quoting Police & Firemen's Ins. Ass'n v. Mullins, 260 Ala. 173, 179, 69 So.2d 261, 266 (1953))(emphasis omitted). However, as a general rule, decisions as to a witness's competency to testify as an expert on a particular subject are within the sound discretion of the trial court. Brown v. Lawrence, supra; Ward v. Dale County Farmers Coop., 472 So.2d 978 (Ala.1985). Although Ray was clearly qualified in the field of neuroscience, the affidavits of Ray support the trial court's determination that he was not qualified to testify as to the actual cause of James's death.
Moreover, the affidavits indicate that Ray's opinion as to James's cause of death is based on mere speculation and conjecture. In his first affidavit, Ray states:
"The deposition testimony of [Jordan] and Yvonne ... as to the symptoms exhibited by [James] indicates that [James's] stoke began prior to his exiting the aircraft or jetway and continued thereafter.... In my scientific opinion, the symptoms of physical weakness, a flushed appearance, slurred speech, and favoring the left side confirm a stroke in progress and should have been readily observable by anyone who saw [James] during this period of time. Had [James] received immediate treatment at this juncture (or earlier) either medically, with anti-edema agents, and/or surgically, the herniation and resulting damage to his brain might have been minimized sufficiently to save his life."
(Emphasis added.)
"A witness's testimony cannot be based on mere speculation and conjecture." Townsend v. General Motors Corp., 642 So.2d 411, 423 (Ala.1994), citing Alabama Power Co. v. Robinson, 447 So.2d 148, 153-54 (Ala.1983)("as a theory of causation, a conjecture is simply an explanation consistent with known facts or conditions, but not deducible from them as a reasonable inference"). Although the affidavits of Ray submitted in support of Jordan's response to the defendants' motion for a summary judgment indicate that Ray has an academic background in neuroscience, they fail to demonstrate that his knowledge regarding this particular incident went beyond speculation. Therefore, we cannot say that the trial court erred by striking the affidavits of Ray.
Jordan further contends on appeal that she submitted substantial evidence of the existence of a genuine issue of material fact with regard to her breach-of-contract claim arising out of the defendants' failure to provide a wheelchair. Specifically, Jordan avers that the damages sought pursuant to the breach-of-contract claim do not sound in tort, and, thus, she argues, the breach-of-contract claim survived the death of James. Section 6-5-462, Ala.Code 1975, provides:

*452 "In all proceedings not of an equitable nature, all claims upon which an action has been filed and all claims upon which no action has been filed on a contract, express or implied, and all personal claims upon which an action has been filed, except for injuries to the reputation, survive in favor of and against personal representatives; and all personal claims upon which no action has been filed survive against the personal representative of a deceased tortfeasor."
In count 4 of her complaint, Jordan sought damages as a result of the defendants' alleged breach of contract, stating that James "was caused to suffer the reasonably foreseeable damages of pain and suffering, mental anguish, humiliation, indignation, embarrassment, and undue worry and concern" as a result of not being provided a wheelchair. "As a general rule, mental anguish is not a recoverable element of actual damages growing out of a breach of contract." Sanford v. Western Life Ins. Co., 368 So.2d 260, 264 (Ala.1979)(citing Birmingham Waterworks Co. v. Vinter, 164 Ala. 490, 51 So. 356 (1910)). However, an exception to this rule exists
"`[w]here the contractual duty or obligation is so coupled with matters of mental concern or solicitude, or with the feelings of the party to whom the duty is owed, that a breach of that duty will necessarily or reasonably result in mental anguish or suffering, [and] it is just that damages therefor be taken into consideration and awarded.'"
Sanford, 368 So.2d at 264 (quoting F. Becker Asphaltum Roofing Co. v. Murphy, 224 Ala. 655, 657, 141 So. 630, 631 (1932)).
The record on appeal indicates that the facts in this case do not support Jordan's contention on appeal that the damages sought fall within the exception to the general rule that a party cannot recover mental-anguish damages caused by an alleged breach of contract. Therefore, the summary judgment of the trial court in favor of Continental and BAA on Jordan's breach-of-contract claim is due to be affirmed.
OPINION of JANUARY 9, 2004, WITHDRAWN; OPINION SUBSTITUTED; APPLICATION FOR REHEARING OVERRULED; AFFIRMED.
PITTMAN J., concurs.
MURDOCK, J., concurs in the result, without writing.
YATES, P.J., dissents, with writing, which CRAWLEY, J., joins.
YATES, Presiding Judge, dissenting.
On June 29, 1999, James R. Jordan, Sr., was a passenger onboard a Continental Airlines flight, which arrived in Birmingham. James, who was 68 years old, suffered from hypertension and walked with a cane because of a leg injury. The facts were disputed as to whether James or a member of his family had requested a wheelchair in advance of the flight. However, before leaving the airplane, James or a family member requested a wheelchair for James's use in deboarding and exiting the airplane. A flight attendant with Continental went to look for a wheelchair, but she did not return. Subsequently, a pilot offered to locate a wheelchair, but he did not return. Yvonne Jordan, James's daughter, could not locate a wheelchair at the nearby gates in the terminal. James's wife, Edna, and Yvonne assisted James into an automobile parked in a handicap-designated parking space. Edna was concerned about James's health, but James declined to go to the hospital. Upon arriving home, Yvonne checked James's blood pressure and called for emergency services. James was transported to the hospital, *453 where he died eight days later as a result of a right thalamic hemorrhage extending into his mid-brain (i.e., a stroke).
Edna sued Continental and the Birmingham Airport Authority ("BAA"), alleging negligence, loss of consortium, and breach of contract as a result of James's death. BAA moved to dismiss Jordan's negligence claim against it based on immunity provided to airport authorities pursuant to § 4-3-7, Ala.Code 1975; the trial court granted BAA's motion. Continental and BAA subsequently moved for a summary judgment; that motion was supported in part by an affidavit from Robert Slaughter, M.D. Edna responded to the summary-judgment motion two affidavits by William Ray, who has earned a Ph.D. in neuroscience. Continental and BAA moved to strike Ray's affidavits; the trial court granted the motion to strike and, at the same time, entered a summary judgment in favor of Continental and BAA. In its order, the trial court stated, in pertinent part:
"If the Court allows the testimony of William J. Ray, Ph.D. (hereinafter `Ray'), then there is a factual issue which must go to the jury; if not, the motion for summary judgment is due to be granted.
"The Court has considered the well-argued briefs filed by the parties in this action and the case law cited therein. The Supreme Court's decision in Knapp v. Wilkins, 786 So.2d 457 (Ala.2000), modified slightly its holding in Kriewitz v. Savoy Heating & Air Conditioning Co., 396 So.2d 49 (Ala.1981). Kriewitz held that the trial court did not err in not allowing clinical psychologists to testify as to causation, limiting causation testimony to medical doctors. Knapp modified that holding to permit, under the circumstances of that case, a chiropractor to testify as to causation of a medical condition.
"The circumstances in Knapp are instructive. The chiropractor in Knapp was licensed under Alabama law to diagnose certain conditions pursuant to § 34-24-120, Ala.Code 1975. Ray is not so licensed. In addition, the chiropractor in Knapp treated the plaintiff multiple times, beginning shortly after the incident in question. Such is not the case here. Ray never treated and, indeed, could not have treated Mr. Jordan. The affidavits submitted by Ray show him to be a well-qualified neurological scientist, one who is clearly qualified to testify as an expert in some areas. However, he does not have experience directly treating patients, and, therefore, is not qualified to testify as an expert as to causation in this case.
"[The] Defendants support their motion for summary judgment with the affidavit of Robert D. Slaughter, M.D., a board certified neurologist. In his affidavit, Dr. Slaughter states:
"`The fact that James Jordan may have walked, on his own or with some assistance, through some portion of the airport did not cause or contribute to cause the fatal cerebral hemorrhage. There is no medical basis to say with any degree of medical certainty that his walking through some portion of the airport caused or contributed to cause the onset of the hemorrhage. There is no medical basis to conclude that, but for having to walk through some portion of the airport, Mr. Jordan would not have suffered the hemorrhage, that the hemorrhage would have been less severe, or that he would not have died from the hemorrhage. To the contrary, I believe his fatal cerebral hemorrhage was caused solely by physiologic and/or genetic conditions that pre-existed the flight in question.'

*454 "The only evidence offered to counter the affidavit of Dr. Slaughter are the two affidavits of Ray. Because the Court is of the opinion that Ray is not qualified to give an opinion as to medical causation in this case, the affidavits of William J. Ray, Ph.D. are STRICKEN. Therefore, there is no evidence to dispute the affidavit of Dr. Slaughter.
"For the reasons set forth herein, the Court finds that there is no genuine issue of material fact and the defendants are entitled to a judgment as a matter of law."
(Emphasis and capitalization in original.)
In Ponder v. Texarkana Memorial Hospital, Inc., 840 S.W.2d 476 (Tex.App.-Houston [14th Dist.] 1991), the parents of an infant who had suffered brain damage sued the hospital where the infant was born and the physicians who treated him. The jury rendered a verdict in favor of the hospital and the physicians, and the trial court entered a judgment on that verdict. However, the Texas appeals court reversed the judgment, holding that the trial court had erred in refusing to allow the parents' expert, a neuroscientist, to testify as to medical causation. The neuroscientist in Ponder taught advanced courses in neurophysiology, neuroanatomy, and neurochemistry to physicians and persons with Ph.D. degrees. He explained "that a medical doctor specializes in making diagnoses and in treating patients, while a researcher like himself specializes in finding the causes of things." 840 S.W.2d at 478. Although the court held that the neuroscientist could not testify as to whether the physicians had breached the standard of care applicable within the community for treatment of a person in the same or similar circumstances as the infant, it held that he could testify as to the cause of the infant's brain damage.
McClain v. Welker, 761 A.2d 155 (Pa.Super.Ct.2000), involved allegations of poisoning from lead-based paint. The trial court determined that the plaintiffs' expert, who had a Ph.D. in neuroscience and psychobiology, could not testify as to medical causation. However, the appellate court held that the trial court had erred in refusing to allow the plaintiffs' expert to testify regarding medical causation solely due to his lack of formal medical training. The appellate court noted that the expert had taught medical classes, written numerous articles, and conducted research, all of which focused on brain dysfunction.
Our supreme court in Knapp v. Wilkins, 786 So.2d 457 (Ala.2000), held that a chiropractor was allowed to testify as to the cause of the plaintiff's injuries because his education, his licensure, and his examination and treatment of his patient in his practice as a chiropractor qualified him to testify regarding the cause of the particular injuries he treated. In Akins Funeral Home, Inc. v. Miller, 878 So.2d 267 (Ala.2003), our supreme court held that a psychologist was qualified to offer expert testimony that the victim's mother had suffered post-traumatic stress disorder and that the victim's wife had experienced a physical injury as a result of the allegedly wrongful cremation of the victim's body. Neither the expert in Knapp nor the expert in Akins Funeral Home was a medical doctor. Although I recognize that the nonphysician experts in Knapp and Akins had treated the particular patients involved in those cases, it should be noted that Dr. Slaughter never treated James and relied on a review of James's medical records and witness testimony to arrive at his conclusions, just as did Ray, the plaintiff's expert in the present case. Ray has written numerous articles, made presentations at scientific meetings, and completed a postdoctoral fellowship at Washington University School of Medicine. He is currently *455 the senior research biochemist at a pharmaceutical company. I recognize that Ray has not treated patients; however, his experiences qualified him to testify as to causation. In one of his affidavits, Ray stated:
"I have focused much of my time in the last 3 years to the study of risk factors for atherosclerosis and hypertension, major causes of stroke.... I do not have direct experience with treating patients personally as a physician, although I did work for several years in primary patient care. However, I am an expert at understanding medical literature, extracting relevant findings, and forming opinions based on the latest information. I develop the medicines and procedures that neurologists use in the treatment of patients, and for that reason, am qualified to assess a patient's state based on medical records and determine what treatments could have been used and what their likelihood of success would have been, based on the medical literature and my knowledge of emerging treatment paradigms."
With regard to the facts in this case, Ray opined, in pertinent part, as follows:
"4. James R. Jordan, Sr.'s, medical records indicate he suffered a right thalamic hemorrhage extending into the mid-brain. The resulting blood flow caused fatal damage to his brain by increasing the pressure beyond acceptable limits. Essentially this caused Mr. Jordan's brain to herniate, or migrate, causing the fatal damage.
"5. The deposition testimony of Edna and Yvonne Jordan as to the symptoms exhibited by James R. Jordan, Sr., indicates that Mr. Jordan's stroke began prior to his exiting the aircraft or jetway and continued thereafter. This testimony was corroborated in the emergency room notes from Mr. Jordan's medical records. In my scientific opinion the symptoms of physical weakness, a flushed appearance, slurred speech, and favoring the left side confirm a stroke in progress and should have been readily observable by anyone who saw Mr. Jordan during this period of time. Had Mr. Jordan received immediate treatment at this juncture (or earlier) either medically, with anti-edema agents, and/or surgically, the herniation and resulting damage to his brain might have been minimized sufficiently to save his life.
"6. Further, the fact that Mr. Jordan had to physically exert himself in leaving the airport without the assistance of a wheelchair (or other similar device such as a stretcher) undoubtedly increased blood pressure and thereby increased the flow of blood at the hemorrhage site and exacerbated an already critical emergency situation."
Continental and BAA argue that Ray's testimony was speculative.
"[A] witness, even one qualified as an expert, must have a factual basis for an opinion. Although any challenge to the adequacy of the factual basis for an expert's opinion normally goes to the weight rather than to the admissibility of the evidence, if the facts relied on by the witness clearly are insufficient to support an opinion, then the challenge may go even to the admissibility of the opinion. Morris v. Young, 585 So.2d 1374 (Ala.1991); Alabama Power Co. v. Robinson, 447 So.2d 148 (Ala.1983); see, also, J. Colquitt, Alabama Law of Evidence, § 7.3 (1990). A witness's testimony cannot be based on mere speculation and conjecture. Townsend v. General Motors Corp., [642 So.2d 411 (Ala.1994)]."
*456 Ammons v. Massey-Ferguson, Inc., 663 So.2d 961, 964-65 (Ala.1995)(Houston, J., concurring specially).
Ray relied on James's medical records and on the deposition testimony of Yvonne and Edna to arrive at his conclusions. He relied on Yvonne's and Edna's descriptions of James's condition while he was in the airport. Ray reviewed the medical records from Baptist-Princeton Hospital, where James went for treatment after the flight. "The facts or data in the particular case upon which an expert bases an opinion or inference may be those perceived by or made known to the expert at or before the hearing." Rule 703, Ala. R. Evid. "This includes data presented to the expert by means other than personal perception, such as through the opinions, records, or reports of others." Rule 703, Advisory Committee's Notes. I do not believe that Ray's use of the phrase "might have been" precludes his testimony. Looking at the totality of Ray's testimony, he opined that it was "undoubted" that James's blood pressure increased when he was forced to exert himself by traversing the airport terminal without the aid of a wheelchair or other device and that that physical exertion increased the flow of blood at the hemorrhage site and exacerbated an already critical emergency cerebral situation, from which James was suffering when he exited the airplane. I note that Continental and BAA raised this argument in their motion for a summary judgment, and the trial court in its order stated that if Ray was allowed to testify as an expert, "then there is a factual issue which must go to the jury." Accordingly, I dissent.
CRAWLEY, J., concurs.