**In The**

*Court of Appeals*

*Ninth District of Texas at Beaumont*

_____

**NO. 09-15-00141-CV**

_____

**ANNIE DORSEY, INDIVIDUALLY AND AS NEXT FRIEND
OF EZRA DORSEY, Appellant**

**V.**

**CHRISTUS HOSPITAL – ST. MARY AND
LESLIE McDONALD LOVELACE,**
**Appellees**

---

**On Appeal from the 136th District Court
Jefferson County, Texas
Trial Cause No. D-193,144-B**

---

**MEMORANDUM OPINION**

Annie Dorsey appeals a no-evidence summary judgment granted in favor of appellees, Christus Hospital – St. Mary ("Christus") and Leslie McDonald Lovelace, with respect to "neurological injury and damages associated with any neurological injury" in Dorsey's health care liability lawsuit. Dorsey raises three issues for our consideration. We affirm the trial court's summary judgment order.

1

BACKGROUND

Annie Dorsey, individually and as next friend of Ezra Dorsey, sued Christus and Lovelace for alleged medical negligence. According to Dorsey's petition, Ezra and her twin brother were born prematurely at thirty-one weeks of gestation via an emergency cesarean section on August 14, 2010. Dorsey alleged that after Ezra was born, she was admitted to the neonatal intensive care unit at Christus "for specialized medical services related to her pre-term and prenatal problems." According to Dorsey, on September 13, 2010, Ezra "suffered a skull fracture after she was dropped or pulled on [sic] the floor by RN Leslie Lovelace, a Registered Nurse employee of Christus Hospital – St. Mary in Neonatal ICU that was responsible for taking care of Ezra." Dorsey asserted that Ezra was "crying and experienced significant trauma[,]" and a CT scan revealed that Ezra had a right linear occipital and parietal skull fracture. Dorsey contended that Lovelace was acting within the course and scope of her employment with Christus when Ezra suffered the skull fracture.

According to Dorsey, Christus transferred Ezra to UTMB hospital in Galveston "for an expert evaluation by a neurosurgeon and a neurologist based upon the request of Ezra's family." Dorsey asserted that neurosurgeon Dr. Aaron Mohanty evaluated Ezra a few months after her fall, and he explained that the fall

caused Ezra's skull fracture, the skull fracture caused "significant trauma" to Ezra, and the skull fracture had not yet healed. Dorsey further contended that in October of 2011, pediatric neurosurgeon Dr. Timothy George of Dell Children's Medical Center of Central Texas evaluated Ezra when she was approximately fourteen months old and issued an expert report, in which he attributed the skull fracture to Ezra's fall, noted that Ezra was hyperactive, and recommended a follow-up visit with a developmental pediatrician.

Dorsey asserted that J. Walter Bordages, Ph.D., performed developmental tests on Ezra and prepared a neuropsychological evaluation report, in which he opined that Ezra's evaluation "supported his diagnoses of a neurocognitive disorder due to traumatic brain injury with behavioral disturbance as a result of the skull fracture[.]" Dorsey contended that Bordages's conclusions were confirmed by Dr. Jerry Tomasovic, who, according to Dorsey, testified by deposition that the skull fracture resulted in a traumatic brain injury to Ezra, and that Christus and Lovelace breached the applicable standard of care, based upon a reasonable medical probability.

Christus and Lovelace filed a hybrid motion for summary judgment as to neurological injury and damages associated with any neurological injury. According to Christus and Lovelace's no-evidence motion, Tomasovic, who is

3

Dorsey's "only retained expert qualified to opine as to causation[,]" had "testified that he could not opine within a reasonable degree of medical probability that Ezra Dorsey suffered any underlying brain injury as a result of Defendants' actions[,]" leaving Dorsey "unable to provide any reliable expert testimony that Ezra Dorsey's neurological injuries, if any, were causally related to Defendants' alleged negligence[.]" In addition, Christus and Lovelace contended that because Dorsey is unable to provide evidence of causation, Dorsey also cannot prove that any future lost wages or medical costs are attributable to the alleged negligence of Christus and Lovelace. Christus and Lovelace state in their motion for summary judgment that they filed a motion to exclude any opinion from Tomasovic as to whether the fall caused Ezra's neurological injuries.

Christus and Lovelace attached as summary judgment evidence a copy of Dorsey's original petition, second amended original opinion, and supplemental expert designation; Christus and Lovelace's motion to exclude Tomasovic's testimony on neurological injury; the deposition testimony of Tomasovic; excerpts from Ezra's medical records; the deposition of Bordages; and a "life care plan and report" by Valerie Purcell and Al Davies, M.D. Dorsey's supplemental expert designation stated that Dorsey expected Tomasovic to testify regarding

> how dropping Baby Ezra Dorsey on the floor high enough to sustain a
> skull fracture places the infant at risk for subsequent neurologic

sequelae and represents a breach of safety outside of the standard of care expected for an infant in a neonatal nursery, and why a longer timeframe is necessary for additional neurodiagnostic and neurodevelopmental assessments and future medical expenses to confirm the potential for complications from the closed head injury[.]

Dorsey did not designate any medical doctor other than Tomasovic as a retained expert regarding the causal relationship between the fall and any neurological injury or deficits Ezra suffered.

When asked during the deposition about what his role is in the case, Tomasovic explained as follows: "[A] developmental pediatrician had identified some delays in Ezra Dorsey's development, motor/language. And that this prompted connecting that to the injury that occurred after the child's . . . birth. And I was asked, [c]an you look at the records to see if you can connect the dots?" When asked whether his report states that he cannot connect the dots at this point, but it may be too early to tell for certain, Tomasovic testified, "That is accurate." According to Tomasovic, most neurologists believe that traumatic brain injury cannot be diagnosed absent either a structural abnormality of the brain or neurologic sequelae,[1] such as altered mental status or seizures, at the time of the injury.

---

[1] "Sequelae" is the plural of "sequela," which means "[a] condition following as a consequence of a disease." *Stedman's Medical Dictionary for the Health Professions and Nursing*, 1525 (7th ed. 2012).

Tomasovic explained that Ezra suffered a nondisplaced skull fracture, meaning that "[t]he edges of the skull fracture were juxtaposed; they were next to each other. One side was not compressed and pushed into the lining of the brain or the brain itself." According to Tomasovic, displaced skull fractures are more likely to cause traumatic brain injury than nondisplaced skull fractures. Tomasovic testified that when he used the term "closed head injury" in his report, he was referring only to the skull fracture, and he explained that he had not concluded that any traumatic brain injury occurred as a result of Ezra's closed head injury. Later, during cross-examination, Tomasovic defined "traumatic brain injury" as "an injury to the skin, scalp, skull, and brain that occurs from an excessive blow to that region and can generate a variety of abnormalities out of that experience[,]" and he testified that an impact that is hard enough to fracture the skull is a traumatic brain injury, and he explained that the fall was "significant enough to potentially cause neurologic damage."

Tomasovic explained that in Ezra's case, he can neither rule out traumatic brain injury nor determine that such an injury occurred. Tomasovic testified that according to his training, if Ezra has global abnormalities, these deficits are likely related to her prematurity, very low birth weight, and opiate exposure. Tomasovic testified that Ezra has multiple risk factors for developmental delay. According to

Tomasovic, intrauterine growth retardation and low birth weight are significant risk factors for developmental delay, and those factors are, statistically speaking, the most likely cause of Ezra's developmental delay. Tomasovic agreed that placental insufficiency could have been the only cause of any developmental delay.

Tomasovic testified that within reasonable medical probability, there is more than a 50 percent probability that the fall caused Ezra's skull fracture, but he explained that he cannot say within a reasonable medical probability that the fall caused any brain injury to Ezra. Tomasovic explained during the deposition that after he reviews Bordages' report, he might find evidence therein to support a claim of long-term neurological damage. However, after the deposition, Tomasovic filed a supplemental expert report, in which he stated, "I reviewed the neuropsychological evaluation of Ezra Dorsey by J. Walter Bordages, Ph.D., a clinical pediatric neuropsychologist that is not a physician but nonetheless qualified to give an expert opinion on baby Ezra Dorsey's long term neurological damages." Tomasovic did not adopt Bordages's opinion, but instead stated in his supplemental report, "I am deferring to the expert opinion of Dr. Bordages on the issue of long term neurological damages[.]" The trial court signed an order granting Christus and Lovelace's no-evidence motion for summary judgment as to neurological injury and damages associated with any neurological injury.

7

ANALYSIS

We review summary judgment orders *de novo*. *Valence Operating Co. v. Dorsett*, 164 S.W.3d 656, 661 (Tex. 2005); *Provident Life & Accident Ins. Co. v. Knott*, 128 S.W.3d 211, 215 (Tex. 2003). We review the trial court's granting of a no-evidence motion for summary judgment under the standards set forth in Rule 166a(i). *See* Tex. R. Civ. P. 166a(i). To defeat a no-evidence summary judgment motion, the non-movant must produce summary judgment evidence that raises a genuine issue of material fact regarding each element challenged by the movant. *Ford Motor Co. v. Ridgway*, 135 S.W.3d 598, 600 (Tex. 2004). The non-movant raises a genuine issue of material fact by producing more than a scintilla of evidence establishing the challenged element's existence. *Id.*; *Forbes Inc. v. Granada Biosciences, Inc.*, 124 S.W.3d 167, 172 (Tex. 2003). More than a scintilla exists when the evidence is such that reasonable and fair-minded people can differ in their conclusions. *Ridgway*, 135 S.W.3d at 601. If "'the evidence offered to prove a vital fact is so weak as to do no more than create a mere surmise or suspicion of its existence, the evidence is no more than a scintilla and, in legal effect, is no evidence.'" *Id.* (quoting *Kindred v. Con/Chem, Inc.*, 650 S.W.2d 61, 63 (Tex. 1983)). In determining whether the non-movant has produced more than a scintilla of evidence, we view the evidence in the light most favorable to the non-

8

movant and disregard all contrary evidence and inferences. *Id.*; *King Ranch, Inc. v. Chapman*, 118 S.W.3d 742, 750-51 (Tex. 2003).

## ISSUE ONE

In her first issue, Dorsey argues that Christus and Lovelace "filed an improper summary judgment motion on unpled affirmative defenses." Christus and Lovelace filed a hybrid motion for summary judgment, and in the no-evidence portion of the motion, Christus and Lovelace contended that Dorsey had not produced expert testimony on the issue of causation and was unable to do so. The trial court granted the no-evidence motion for summary judgment. Christus and Lovelace's no-evidence motion for summary judgment was not based on an unpleaded affirmative defense; rather, it simply asserted that Dorsey was unable to provide any evidence on causation, which is an essential element of her claims. *See generally* Tex. R. Civ. P. 166a(i) ("[A] party may move for summary judgment on the ground that there is no evidence of one or more essential elements of a claim or defense on which an adverse party would have the burden of proof at trial."); Tex. R. Civ. P. 94 (Lack of proximate cause is not one of the defenses which Rule 94 provides must be affirmatively set forth.). We overrule issue one.

9

## ISSUE TWO

In her second issue, Dorsey contends the trial court erred by granting the no-evidence summary judgment because "the trial court was barred by rules of law or evidence from giving weight to any of the evidence offered to prove a vital fact." As explained above in our discussion of issue one, the motion for summary judgment was a no-evidence motion, in which Christus and Lovelace argued that Dorsey, who had the burden to prove causation, was unable to do so. At issue was whether Dorsey could produce more than a scintilla of evidence of causation, not the ability of Christus and Lovelace to prove an affirmative defense. *See generally* Tex. R. Civ. P. 94, 166a(i). We overrule issue two.

## ISSUE THREE

In her third issue, Dorsey argues that the trial court erred by granting the no-evidence motion for summary judgment because genuine issues of material fact exist regarding the proximate cause of Ezra's neurological injury. Specifically, Dorsey argues that Bordages is qualified to testify as an expert witness on the issue of causation. In support of her argument, Dorsey cites *Ponder v. Texarkana Memorial Hospital, Inc.*, 840 S.W.2d 476, 477-78 (Tex. App.—Houston [14th Dist.] 1991, writ denied). In *Ponder*, the Fourteenth Court found that an expert,

though not a medical doctor, should be allowed to testify to causation. *Ponder*, 840 S.W.2d at 478.

To recover under the Medical Liability Act, the defendant health care provider's "act or omission complained of must proximately cause the injury to the claimant." *Tex. West Oaks Hosp., LP v. Williams*, 371 S.W.3d 171, 180 (Tex. 2012); *see also* Tex. Civ. Prac. & Rem. Code Ann. § 74.001(a)(13) (West Supp. 2014).

> [I]n a suit involving a health care liability claim against a physician or health care provider, a person may qualify as an expert witness on the issue of the causal relationship between the alleged departure and accepted standards of care and the injury, harm, or damages claimed only if the person is a physician[.]

Tex. Civ. Prac. & Rem. Code Ann. § 74.403(a) (West 2011). Health care institutions and registered nurses are included within the Medical Liability Act's definition of "health care provider." *Id*. § 74.001(a)(12)(A)(i), (vii) (West Supp. 2014). Therefore, to qualify as an expert witness regarding the relationship between the alleged negligence of Christus and Lovelace and the injury, harm, or damages Ezra suffered, the expert witness must be a physician. *See id*. §§ 74.001, 74.403(a). *Ponder* was decided prior to the enactment of section 74.403(a). Because Bordages is not a medical doctor, the trial court was statutorily prohibited from considering Bordages's opinions regarding causation. *See id*.

11

As discussed above, Tomasovic was Dorsey's only expert witness designated to testify regarding causation, and Tomasovic testified at his deposition that he was unable to "connect the dots" between the skull fracture and Ezra's alleged neurological injury or deficits. Tomasovic indicated that he had not concluded that any traumatic brain injury occurred as a result of Ezra's skull fracture. Additionally, in his supplemental expert report, Tomasovic did not adopt Bordages's opinion, nor did he clarify or reevaluate his own testimony in light of Bordages's findings; instead, Tomasovic simply stated that he deferred to Bordages's opinion. Tomasovic's testimony that a fall that was severe enough to cause a skull fracture was "significant enough to potentially cause neurologic damage" does no more than create a surmise or suspicion that the fall caused Ezra's alleged neurological injuries; therefore, it does not amount to more than a scintilla of evidence of causation. *See Ridgway*, 135 S.W.3d at 601. For all of these reasons, we overrule issue three and affirm the trial court's summary judgment.

AFFIRMED.

_____
STEVE McKEITHEN
Chief Justice

Submitted on July 27, 2015
Opinion Delivered October 15, 2015

Before McKeithen, C.J., Kreger and Johnson, JJ.

12