In The
*Court of Appeals*
*Ninth District of Texas at Beaumont*
NO. 09-23-00397-CV

**JERMAINE ANTHONY VALLIER JR., Appellant**

**V.**

**CAROLYN M. HOLLOWAY, Appellee**

On Appeal from the 172nd District Court
Jefferson County, Texas
Trial Cause No. E-206651

**MEMORANDUM OPINION**

In this personal injury suit, Appellant Jermaine Anthony Vallier Jr. (Appellant, Vallier, or Defendant) appeals from a judgment in favor of Appellee Carolyn M. Holloway (Appellee, Holloway, or Plaintiff). In three issues, Vallier challenges the legal sufficiency of the evidence supporting the jury's award of $96,250 for physical pain and mental anguish in the future and the award of $96,250 for future physical impairment. We sustain Appellant's issues in part, affirm the judgment in part, and reverse and render in part.

1

Background and Evidence at Trial Pertinent to this Appeal[1]

The Accident

Holloway filed suit against Vallier, alleging that on January 9, 2020, Vallier failed to control his speed, failed to yield the right of way, ran a stop sign, and struck the vehicle Holloway was driving. According to the petition, Holloway sustained bodily injuries requiring medical care and treatment, and her damages and personal injuries were proximately caused by Vallier's negligence. The case was tried before a jury.

Testimony of Jennifer LaBorde

Jennifer LaBorde testified that she has been a family nurse practitioner since 2012, is board-certified in family practice, received a Bachelor of Science in Nursing, as well as a Master of Science in Nursing, and she has worked in pain management for the past nine or ten years. LaBorde works for Lone Star Pain Clinic, operating formerly as Dickerson Pain Clinic, under her supervising physician, Dr. Karen Dickerson. According to LaBorde, she works different hours from Dr. Dickerson, and LaBorde has never watched Dr. Dickerson physically examine someone but instead reads her charts. LaBorde explained that as a nurse practitioner at a pain management clinic, she assesses, diagnoses, and treats patients. As for

---

[1] In this memorandum opinion, we only discuss background facts and evidence pertinent to the issues on appeal.

2

LaBorde's qualifications, she testified that she has not been to medical school, and she is not a doctor. LaBorde explained that she is allowed to prescribe medicine under her supervising physician, she is allowed to order surgical consultations and recommend injections, but as a nurse, she is not allowed to perform spinal injections or surgeries. She testified that she is board certified in family practice and that she has treated people long-term who had injections for many years.

According to LaBorde, when a patient comes into the clinic, LaBorde obtains the patient's history, learns where they are hurting and the type of pain, and then determines appropriate diagnostic testing necessary for diagnosing the problem such as X-rays, MRIs, and CAT scans. LaBorde explained that patients at the clinic are often "treat[ed] with anti-inflammatory, muscle relaxers[]" depending on the severity of pain.

LaBorde testified that Holloway was a patient of the clinic and that LaBorde was not the only nurse practitioner that treated Holloway at the clinic. LaBorde recalled that, according to the clinic's records, twenty-one-year-old Holloway delivered her baby on May 30, 2020, and first visited the clinic on June 1, 2020, and Dr. Dickerson was the first to examine Holloway. Holloway returned to the clinic on June 4, 2020, and was not evaluated by Dr. Dickerson or LaBorde, but she was evaluated by a different family nurse practitioner. LaBorde agreed that Holloway was not seen at the clinic again until October of 2022. LaBorde testified that although

she had not seen any medical records regarding what was going on with Holloway during those two-and-a-half years, LaBorde believed that breastfeeding was a reasonable explanation for a patient not getting steroid injections and other medications from a pain clinic, and also a mother would need help taking care of a child after the mother received a steroid injection because the mother's activities would be limited. According to LaBorde, she saw Holloway in October of 2022 and an MRI was ordered based on Holloway's complaints of "low back pain that was radiating into the left hip and down the leg with some numbness and tingling," neck pain, and headaches. LaBorde stated Holloway waited to get an MRI evaluation because at the time of the automobile accident with Vallier she was pregnant, and it would make sense to wait until after the baby was born to have testing done because while pregnant an MRI evaluation would be prohibited due to risk of radiation to the fetus.

LaBorde testified that the MRI showed Holloway suffered from four herniated discs. LaBorde testified that there is really no reason for someone in their early twenties to have disc herniations and that she saw no signs of aging or arthritic changes like stenosis in Holloway's MRI or any evidence of degeneration on the radiologist's report. When asked how LaBorde, with her knowledge as a nurse practitioner dealing with spinal injuries, could explain four herniated discs in a twenty-one-year-old without major trauma, defense counsel objected on the basis

4

that LaBorde "has not been qualified to testify on the issue of causation[,]" and the trial court overruled the objection. LaBorde answered "[t]here is really no reason why she would have dis[c] herniations at 20—early 20s." LaBorde testified that Dr. Dickerson read the MRI and recommended injections that Dr. Dickerson administered to Holloway in November and December of 2022. According to LaBorde, she last examined Holloway more than six months before trial, and LaBorde agreed that at that time Holloway's examination was "100 percent normal[.]" Although LaBorde told Holloway to come back if needed, she never returned to the clinic or called to make another appointment.

Holloway's Testimony

Holloway testified that immediately following the automobile accident with Vallier she was in pain and wondered whether her baby was okay. An ambulance was called to the scene, but Holloway was not bleeding and refused to be transported to the hospital by ambulance. According to Holloway, later that day she went to the hospital and a triage nurse attended to her, but after waiting a few hours in the emergency room lobby, she went home. The next day she returned to the hospital complaining of pain in her lower stomach, left side, lower back, and neck. The hospital performed X-rays and an ultrasound that showed no acute abnormality with her pregnancy, and she was released after a couple of hours. Holloway gave birth to her baby with no complications, and then sought treatment at Dickerson Pain Clinic

5

for pain in her left side, neck, shoulder, and lower back, and for tingling in her hands. Holloway recalled that on the initial visit she was examined by Dr. Dickerson and afterwards she saw LaBorde and other nurse practitioners at the clinic. According to Holloway, LaBorde referred Holloway for an MRI and therapy, and she received injections on two occasions in her lower back once she quit breastfeeding in the Fall of 2022. Holloway testified that she received injections for her pain and that she did not get surgery because it would "put a hold on" being able to take care of her child and the two elderly people she takes care of. Holloway agreed that she followed up with the clinic after the injections and the records indicated that she was "90 percent improved" and had an intermittent ache, and at her last visit at the clinic she reported that she had full range of motion and "checked out fine as far as her exam[.]" According to Holloway, a provider at the clinic told her to come back on an as-needed basis, but she had not been back since then and had not called and scheduled an appointment since then.

Holloway testified that her injuries after this accident have affected her independence and her ability to get out and enjoy life. Holloway also testified that since the time of this automobile accident her activities have been limited such as her ability to pick up and care for her baby, her ability to pick up a fish when she catches one when fishing, and she can no longer jump with her daughter or ride bicycles or water slides with her daughter because it is painful. Holloway also stated,

6

"I can do everything that I been [sic] doing. It just takes me a little longer." She recalled that she had thoughts of suicide after the accident, but she did not act on those thoughts and "g[ot] past it[.]" She does not deny that the clinic's medical records from June 1, 2020 stated that Holloway told the clinic she had not had suicidal thoughts, but she disagreed with Dr. Dickerson's notation that Holloway reported that her "depression may [be] due to post partum depression." Holloway testified that she saw a mental health professional through Spindletop but agreed that she did not have any records or bills for those visits, and she agreed that her depression "all got better[.]" Holloway recalled that prior to this accident, she had been involved in two other car accidents for which she had to be examined at a hospital but agreed that she was "fine" after both of those accidents. According to Holloway, nothing other than this car accident could have caused the herniations in her spine.

The Jury Verdict, The Judgment, and the Defendant's Post-Trial Motion

The jury found that Vallier's negligence proximately caused Holloway's injuries, and the jury awarded her $7,500 for physical pain and mental anguish sustained in the past, $96,250 for physical pain and mental anguish in the future, $0 for physical impairment in the past, and $96,250 for physical impairment in the future. The jury also found that Vallier was grossly negligent and awarded Holloway $200 in exemplary damages. On September 12, 2023, the trial court rendered Final

7

Judgment in accordance with the jury's verdict and awarded pre- and post-judgment interest. On October 12, 2023, Vallier filed Defendant's Motion for Judgment Notwithstanding the Verdict, which was overruled by operation of law.

Issues on Appeal

In issue one, Vallier argues that there is legally insufficient evidence to support the jury's award of damages for future physical pain because Holloway only presented a nurse practitioner to testify that Vallier's disc herniations were caused by the automobile accident in this case, and that the trial court improperly overruled Vallier's objection that Holloway was not qualified to testify on medical causation. In issue two, Vallier argues that there is legally insufficient evidence to support the jury's award of future impairment because Holloway failed to present competent evidence of causation of her injuries that formed the basis of her claim for impairment, and that the award of damages for future physical impairment is not sustainable considering the jury's award of $0 in past physical impairment. In issue three, Vallier challenges the legally sufficiency of the evidence supporting an award for future mental anguish. Vallier does not challenge the jury's findings of negligence or gross negligence, or the awards of $7,500 for Holloway's physical pain and mental anguish sustained in the past and $200 for Vallier's gross negligence.

Standard of Review

Evidence is legally sufficient if it "would enable reasonable and fair-minded people to reach the verdict under review." *City of Keller v. Wilson*, 168 S.W.3d 802, 827 (Tex. 2005). Evidence is legally insufficient to support the finding only if (a) there is a complete absence of evidence of a vital fact, (b) the court is barred by rules of law or evidence from giving weight to the only evidence offered to prove a vital fact, (c) the evidence offered to prove a vital fact is no more than a scintilla, or (d) the evidence conclusively establishes the opposite of the vital fact. *Id.* at 810. When reviewing the legal sufficiency of the evidence, we consider the evidence in the light most favorable to the verdict and indulge every reasonable inference to support it. *Id.* at 822. We credit favorable evidence if a reasonable juror could and disregard contrary evidence unless reasonable jurors could not disregard the contrary evidence. *Id.* at 827.

Analysis

In issues one and two, Vallier argues that there is legally insufficient evidence to support the jury's award of damages for future physical pain and future impairment because Holloway only presented a nurse practitioner to testify that Holloway's disc herniations were caused by this automobile accident, and Vallier argues the trial court improperly overruled Vallier's objection that Holloway was not qualified to testify on medical causation. Vallier argues that the only expert

9

testimony or evidence Holloway presented to establish a causal link between her diagnosed disc herniations and the pain and impairment she will suffer in the future was LaBorde's testimony. Vallier argues that LaBorde is a nurse practitioner and not a licensed medical doctor, radiologist, or pain management doctor, she was not qualified to testify about what caused Holloway's injuries, and therefore, her testimony was legally insufficient to support the jury's award of future physical pain and physical impairment caused by the disc herniations. Vallier contends that LaBorde's testimony is not only unreliable, but also speculative and conclusory. Vallier also argues that LaBorde "never actually testified that the auto accident at issue caused Holloway's disc herniations[]" or that "in all reasonable medical probability, the auto accident with Vallier caused Holloway's disc herniations." Vallier asserts that, even if this Court could construe LaBorde's testimony as linking the disc herniations to this automobile accident, the testimony would be impermissibly conclusory because she testified only that Holloway must have suffered a traumatic injury because she was young and LaBorde would not expect to see herniated discs in a twenty-one-year-old patient otherwise.

On appeal, Holloway responds that LaBorde is qualified as an expert to testify that the collision caused Holloway's disc herniations and that Holloway's disc herniations will likely cause her to experience pain in the future. Holloway argues that under Texas law non-physicians can qualify as medical experts by virtue of

special experience, citing to *Ponder v. Texarkana Memorial Hospital, Inc.*, 840 S.W.2d 476, 478 (Tex. App.—Houston [14th Dist.] 1991, writ denied), *Bilderback v. Priestley*, 709 S.W.2d 736, 741 (Tex. App.—San Antonio 1986, writ ref'd), and *Johnson v. Hermann Hospital*, 659 S.W.2d 124, 126 (Tex. App.—Houston [14th Dist.] 1983, writ ref'd n.r.e.). According to Holloway, LaBorde "has the education and experience to testify about causation of Appellee's disc herniations, and the effects of those herniations[]" based on the following facts from LaBorde's curriculum vitae and the trial testimony:

Education and Training
- Earned a Licensed Vocational Nurse Certificate from Lamar State College in 1999[];
- Earned an Associate Degree in Nursing from Lamar State College in 2002[];
- Earned a Bachelor's Degree in Nursing from Lamar University in 2006[]; and
- Earned a Master's Degree in Nursing from the University of Texas Health Science Center in 2012.[]

Experience and Knowledge
- Has worked as a nurse practitioner in a medical facility that focused on pain management for at least the last 9 years; []
- [W]as responsible for the examination, assessment, diagnosis, and treatment of patients dealing with orthopedic conditions and pain. This involved interpreting imaging results and recommending interventional treatment options[];
- [She] has worked in the field of pain management for so long she has seen the evolution of the pain management treatment paradigm from before the opioid crisis to today[];
- She has treated people that have received injections for pain management[];

11

- Based on her education and experience, [she] explained that MRIs are used over x-rays because MRIs can reveal injuries to soft tissue that x-rays cannot[];
- She succinctly explained how disc herniations cause pain: a herniation[] means a spinal disc is protruding out from the spinal canal and touches a nerve root[]; and
- She explained how the location of a disc herniation is tied to different parts of the body, for example, if someone is feeling pain in their hip and there is no hip issue, it can be traced back to a herniation between a person's 4th and 5th lumbar discs.[]

Holloway further argues that LaBorde's testimony is reliable because she was one of Holloway's medical providers, citing to *LMC Complete Automotive, Inc. v. Burke*, 229 S.W.3d 469, 478-79 (Tex. App.—Houston [1st Dist.] 2007, pet. denied) and *Johnson*, 659 S.W.2d at 125-27. Holloway argues it is unnecessary for LaBorde to use phrases such as "reasonable medical probability" to make her opinion admissible and to connect the collision to Holloway's disc herniations. Holloway also argues that the medical records in this case provided evidence of causation because they contained statements linking the collision to the disc herniations.

Holloway, as the plaintiff, bore the burden to prove that her injuries and damages were proximately caused by the car accident with Vallier. *See Doe v. Boys Clubs of Greater Dallas, Inc.*, 907 S.W.2d 472, 477 (Tex. 1995). Proving causation "requires a plaintiff to 'prove that the conduct of the defendant caused an event and that this event caused the plaintiff to suffer compensable injuries.'" *JLG Trucking, LLC v. Garza*, 466 S.W.3d 157, 162 (Tex. 2015) (citing *Burroughs Wellcome Co. v. Crye*, 907 S.W.2d 497, 499 (Tex. 1995)). "The general rule has long been that expert

testimony is necessary to establish causation as to medical conditions outside the common knowledge and experience of jurors." *Guevara v. Ferrer*, 247 S.W.3d 662, 665 (Tex. 2007). "[E]xpert medical evidence is required to prove causation unless competent evidence supports a finding that the conditions in question, the causal relationship between the conditions and the accident, and the necessity of the particular medical treatments for the conditions are within the common knowledge and experience of laypersons." *Id.* at 663. "Evidence of an event followed closely by manifestation of or treatment for conditions which did not appear before the event raises suspicion that the event at issue caused the conditions." *Id.* at 668. "But suspicion has not been and is not legally sufficient to support a finding of legal causation." *Id.* "When evidence is so weak as to do no more than create a surmise or suspicion of the matter to be proved, the evidence is 'no more than a scintilla, and in legal effect, is no evidence.'" *Id.* (quoting *Ford Motor Co. v. Ridgway*, 135 S.W.3d 598, 601 (Tex. 2004). "Nevertheless, when combined with other causation evidence, evidence that conditions exhibited themselves or were diagnosed shortly after an event may be probative in determining causation." *Id.* When expert testimony is required, lay evidence supporting liability is legally insufficient. *City of Keller*, 168 S.W.3d at 812.

To constitute competent evidence of causation, a medical expert's opinion must be reliable and rest on reasonable medical probability. *Crye*, 907 S.W.2d at

500-01. "This rule applies whether the opinion is expressed in testimony or in a medical record, as the need to avoid opinions based on speculation and conjecture is identical in both situations." *Id.* at 500. An expert's bare proclamation that this one event caused another is not enough to establish causation; "the expert must go further and explain, to a reasonable degree, how and why the breach caused the injury based on the facts presented." *Jelinek v. Casas*, 328 S.W.3d 526, 539-40 (Tex. 2010). That said, "[w]hether expert testimony on causal connection rests upon reasonable medical probability must be determined by the substance and context of the testimony rather than semantics or use of a particular term or phrase." *Thompson v. Stolar*, 458 S.W.3d 46, 57 (Tex. App.—El Paso 2014, no pet.) (citing *Crye*, 907 S.W.2d at 500).

Determining the qualifications of a witness as an expert lies within the trial court's discretion, and absent a showing of clear abuse, that decision will not be disturbed on appeal. *Broders v. Heise*, 924 S.W.2d 148, 151 (Tex. 1996). "The test for abuse of discretion is whether the trial court acted without reference to any guiding rules or principles." *Id.* The party offering the expert's testimony bears the burden of establishing that the witness is qualified as an expert. *Id.* The offering party must show that the expert has knowledge, skill, experience, training, or education regarding the specific issue before the trial court that would qualify the expert to give an opinion on the particular subject. *Id.* at 153.

Expert testimony is generally necessary to establish causation of medical conditions that are "outside the common knowledge and experience of jurors." *See Guevara*, 247 S.W.3d at 665. In limited cases, however, lay testimony may support a causation finding that links an event with a person's physical condition. *Id.* at 666. This exception applies only in those which general experience and common sense enable a layperson to determine the causal relationship with reasonable probability. *See id.*; *Morgan v. Compugraphic Corp.*, 675 S.W.2d 729, 733 (Tex. 1984).

Holloway concedes that because of the type of injuries for which she is seeking compensation—multiple disc herniations—this case is not one in which general experience and common sense enable a layperson to determine the causal relationship with reasonable probability, and therefore, she agrees that she needed expert testimony to establish a causal connection between the automobile accident and her disc herniations. *See, e.g.*, *Sosa v. Montgomery Cnty.*, No. 09-22-00035-CV, 2023 Tex. App. LEXIS 2550, at **10-13 (Tex. App.—Beaumont Apr. 20, 2023, no pet.) (mem. op.) (expert testimony needed to establish causal connection between the automobile accident and plaintiff's disc protrusions, stenosis, and related injuries); *see also Lara v. Bui*, No. 01-21-00484-CV, 2023 Tex. App. LEXIS 1269, at **16-17 (Tex. App.—Houston [1st Dist.] Feb. 28, 2023, pet. denied) (mem. op.) (expert testimony needed to establish causal connection between car accident and plaintiff's injuries of two herniated discs and related conditions); *McGee v. Tatum*,

15

No. 05-21-00303-CV, 2022 Tex. App. LEXIS 8656, at **13-14 (Tex. App.—Dallas Nov. 28, 2022, no pet.) (mem. op.) (expert testimony required to prove automobile accident caused plaintiff's bulging discs, a herniated disc, and similar injuries); *Kelley v. Aldine Indep. Sch. Dist.*, No. 14-15-00899-CV, 2017 Tex. App. LEXIS 829, at *6 (Tex. App.—Houston [14th Dist.] Jan. 31, 2017, pet. denied) (mem. op.) (expert testimony needed to establish a causal connection between work-related fall and multiple disc herniations, cervical radiculitis, and lumbar radiculopathy); *City of Laredo v. Garza*, 293 S.W.3d 625, 632-33 (Tex. App.—San Antonio 2009, no pet.) (lay testimony alone was not sufficient to prove medical causation of disc herniations and radiculopathy and plaintiff's complaint of back pain one week after on-the-job injury required expert medical testimony to establish causal link to accident).

Relying on three cases—*Ponder*, *Bilderback*, and *Johnson*—Holloway argues that non-physicians may qualify as medical experts by virtue of special experience. *See Ponder*, 840 S.W.2d at 478; *Bilderback*, 709 S.W.2d at 741; *Johnson*, 659 S.W.2d at 126. We conclude that the cases on which Holloway relies are clearly distinguishable from the facts in the case at bar.

In *Ponder*, a mother alleged that the defendant-doctor, her son's pediatrician, was negligent in caring for her son and caused his severe brain damage. 840 S.W.2d at 477. The trial court ruled that Dr. David Jensen, not a medical doctor but a research

16

neuroscientist with a Doctorate in Neuroscience who had taught medical students and courses in neuroscience, neurophysiology, neuroanatomy, and neurochemistry, could testify as an expert, but the court prohibited Dr. Jensen from testifying concerning the cause of the boy's brain damage. *Id.* at 477-78. The Fourteenth Court of Appeals determined that the trial court did not abuse its discretion by preventing Dr. Jensen from answering questions concerning the standard of care, but that Dr. Jensen should have been permitted to address causation:

> [Jensen's] experience clearly qualified him to testify about brain function and the causes of damage to the brain. His testimony would have provided "scientific, technical, or other specialized knowledge [that would have assisted] the trier of fact to understand the evidence or to determine a fact in issue." Tex. R. Civ. Evid. 702. Professionals such as Jensen are precisely the people responsible for teaching medical students and medical specialists. The other physician-experts more than likely acquired their knowledge of the area form a professional like Jensen. It would be nonsensical to permit physicians to testify about the causes of brain damage, yet prevent testimony from the very people who teach the physicians.

*Id.* at 478.[2] Here, LaBorde has not taught medical students, nor has she demonstrated as a nurse practitioner how she has specialized knowledge qualifying her to testify that the automobile accident with Vallier caused Holloway's disc herniations. And

---

[2] In *Dorsey v. Christus Hospital*, No. 09-15-00141-CV, 2015 Tex. App. LEXIS 10607, at **11-12 (Tex. App.—Beaumont Oct. 15, 2015, no pet.) (mem. op.), this Court noted that *Ponder* was decided prior to the enactment of section 74.403(a) of the Texas Medical Liability Act that requires that to qualify as an expert witness on the issue of the causal relationship between the defendant's alleged negligence and the injury, harm, or damages the plaintiff suffered, the expert witness must be a physician. *See* Tex. Civ. Prac. & Rem. Code Ann. § 74.403(a).

LaBorde provided nothing more than mere speculation regarding the possible cause of the herniations.

In *Bilderback*, a medical malpractice suit against the defendant-doctor for aggravating the plaintiff's injury through the doctor's course of physical therapy on the plaintiff, the San Antonio Court of Appeals determined that the trial court did not err in allowing Dr. Marvin Chatkoff to testify as an expert for the plaintiff. 709 S.W.2d at 738-39, 741. The San Antonio Court of Appeals concluded that Dr. Chatkoff was qualified because he held a Doctoral degree in biophysics and taught medical students, concerning the mechanics, forces and effects of weights used in administering physical therapy by orthopedic specialists to their patients and his testimony "was confined to his precise area of expertise in biophysics." *Id.* at 741. In the present case, LaBorde has not demonstrated that her precise area of expertise is in determining the cause of or mechanics of disc herniations, nor has she taught medical school courses of study on that topic to medical students.

In *Johnson*, a fifteen-year-old-girl suffered brain damage while recovering in a hospital's surgical intensive care unit (SICU). 659 S.W.2d at 125. She had undergone oral and facial surgery to correct "buck teeth" and, although the surgery was successful, she suffered respiratory and cardiac arrest because her brain had been deprived of oxygen during her recovery in the SICU and she suffered permanent brain damage. *Id.* In the SICU, she was breathing through an endotracheal

18

tube (an artificial airway which runs down the nose into the windpipe and provides a mechanism for air to go into and out of the lungs), and the SICU nurses were responsible for suctioning the tube with the use of special catheters to keep the airway open. *Id.* The hospital was sued, and the plaintiffs alleged that the nurse charged with caring for the patient in the SICU was inexperienced in critical care nursing and was responsible for more patients than she could care for properly and adequately, and that the patient's airway was not adequately suctioned resulting in her respiratory and cardiac arrest and brain damage. *Id.* The plaintiffs argued on appeal that the trial court erred in excluding the expert rebuttal witness testimony of nurse Wanda Karcher on the basis that she was not qualified. *Id.* Nurse Karcher was called as a rebuttal witness to testify as to the proper standard of care by nurses in SICUs. *Id.* The Fourteenth Court of Appeals determined that Karcher was qualified to testify about the nursing standard of care because of her extensive experience working as a nurse in SICUs and her experience in the care of patients using endotracheal tubes and in the proper method of suctioning those tubes, and because her testimony revealed that she was sufficiently familiar with the subject to qualify her as an expert witness. *Id.* at 125-27. In *Johnson*, as opposed to our present case, the nurse was called as a rebuttal witness to testify as to the proper standard of care by nurses in SICUs. Here, LaBorde was not called to testify as an expert witness as to the proper standard of care for a nurse or nurse practitioner. The plaintiff sought

19

to rely upon and offered LaBorde's testimony to prove the automobile accident caused Holloway's disc herniations. Under the facts of this case, we conclude LaBorde was not qualified to give such testimony.

We find nothing in LaBorde's testimony or curriculum vitae that addresses how her knowledge, skill, experience, training, or education as a nurse practitioner qualifies her to opine on the causal relationship between this automobile accident and Holloway's disc herniations. The fact that she was one of Holloway's treating nurses also does not provide any specialized knowledge that qualifies her to testify as to whether this automobile accident caused Holloway's disc herniations. We conclude the trial court abused its discretion in overruling Vallier's objection and allowing LaBorde to testify regarding the causation of Holloway's disc herniations.

We also disagree with Holloway's contention that the medical records admitted at trial establish the causal link between this automobile accident and Holloway's disc herniations. A similar argument was rejected in *Hills v. Donis*, No. 14-18-00566-CV, 2021 Tex. App. LEXIS 1076, at **10-12 (Tex. App.—Houston [14th Dist.] Feb. 11, 2021, pet. denied) (mem. op.). Holloway references medical records from her visit to Baptist Hospitals of Southeast Texas the day after the collision that state that the "mechanism of injury" was the motor vehicle collision and to medical records from Holloway's initial visit at Dickerson Pain Clinic that state that the mechanism of injury was that Holloway was involved in a motor

vehicle accident. This type of mere recitations in medical records simply are not the equivalent of the type of evidence required to establish independent opinions on causation. *Crye*, 907 S.W.2d at 500.

Without competent evidence that the automobile accident with Vallier caused Holloway's disc herniations, the evidence is legally insufficient to support the jury's award of damages for future physical pain and future impairment. *See JLG Trucking, LLC*, 466 S.W.3d at 162 (citing *Crye*, 907 S.W.2d at 499); *Doe*, 907 S.W.2d at 477. We sustain issues one and two.

In issue three, Vallier argues that there is legally insufficient evidence to support the jury's finding of future mental anguish. Vallier concedes that because the jury question as to damages for future pain and future mental anguish were submitted together in one question, he must prove the evidence is legally insufficient to support the damage award based on both components for this Court to set aside the award. According to Vallier, the only evidence Holloway presented for future mental anguish was that she at some point had suicidal thoughts but that she "got past it[,]" and that she had had concerns about her pregnancy immediately after the accident but at the time of trial had already given birth to a healthy baby. Vallier also contends that Holloway failed to bring forth any evidence to guide the jury on how to measure any compensable loss for mental anguish.

21

In her appellate brief, Holloway points to no evidence supporting the jury's award for mental anguish. Instead, she argues that because there is legally sufficient evidence to support the jury's award for future physical pain, this Court should affirm the award even if there is no evidence of mental anguish. We have already determined that the jury's award for future physical pain is not supported by legally sufficient evidence.

"A damages award for mental anguish will survive a legal-sufficiency challenge when the record bears 'direct evidence of the nature, duration, and severity of [the plaintiff's] mental anguish, thus establishing a substantial disruption in the plaintiff['s] daily routine,' or when the record demonstrates 'evidence of a high degree of mental pain and distress that is more than mere worry, anxiety, vexation, embarrassment, or anger.'" *Anderson v. Durant*, 550 S.W.3d 605, 618-19 (Tex. 2018) (quoting *Parkway Co. v. Woodruff*, 901 S.W.2d 434, 444 (Tex. 1995)). "Such evidence is more likely to provide the fact finder with adequate details about the extent of the claimant's mental anguish." *Id.* at 619 (citing *Parkway Co.*, 901 S.W.2d at 444). "'[G]eneralized, conclusory descriptions of how an event affected a person are insufficient evidence on which to base mental anguish damages.'" *Id.* (quoting *Serv. Corp. Int'l v. Guerra*, 348 S.W.3d 221, 232 (Tex. 2011)). While the impossibility of any exact evaluation of mental anguish requires that juries be given a measure of discretion in finding damages, juries must find an amount that "would

fairly and reasonably compensate" for the loss. *Bentley v. Bunton*, 94 S.W.3d 561, 606 (Tex. 2002). To recover damages for future mental anguish, the plaintiff must further demonstrate a reasonable probability that compensable mental anguish will persist. *Anderson*, 550 S.W.3d at 619 (citing *Adams v. YMCA of San Antonio*, 265 S.W.3d 915, 917 (Tex. 2008)).

Holloway testified that since the time of this automobile accident "I can do everything that I [have] been doing. It just takes me a little longer." She also agreed that a provider at the clinic told her to come back on an as-needed basis, but that she had not been back since then and had not called and scheduled an appointment since then. Holloway recalled that she "g[ot] past" her thoughts of suicide and that her depression "all got better[.]"

Having viewed the evidence in the light most favorable to the jury's findings, we cannot say this record bears direct evidence of the nature, duration, and severity of Holloway's mental anguish, thus establishing a substantial disruption in her daily routine, or that the record demonstrates evidence that she experienced a high degree of mental pain and distress that is "more than mere worry, anxiety, vexation, embarrassment, or anger." *See Anderson*, 550 S.W.3d at 618-19. Also, on this record there is no evidence justifying the amount awarded for future mental anguish. *See Saenz v. Fid. & Guar. Ins. Underwriters*, 925 S.W.2d 607, 614 (Tex. 1996) (Although a jury has broad discretion in awarding damages for physical pain and

mental anguish, there must be some evidence to justify the amount awarded, as a jury "cannot simply pick a number and put it in the blank."). We sustain issue three.

## Conclusion

Having sustained Appellant's issues, we reverse the judgment as to the jury's award of $96,250 for physical pain and mental anguish in the future and $96,250 for physical impairment in the future, and we render that Appellee take nothing for those damages. Otherwise, we affirm the judgment in all other respects.

AFFIRMED IN PART; REVERSED AND RENDERED IN PART.


LEANNE JOHNSON
Justice


Submitted on May 1, 2025
Opinion Delivered June 19, 2025

Before Johnson, Wright and Chambers, JJ.

24